STATE of Tennessee, Appellee,

v.

Frank Anthony BARNARD, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

Sept. 1, 1994.

Permission to Appeal Denied by Supreme Court Nov. 28, 1994.

Clark L. Shaw, Michael D. Noel, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Cecil H. Ross, Asst. Atty. Gen., Crim. Justice Div., Nashville, Victor S. (Torry) Johnson, III, Dist. Atty. Gen., Jon P. Seaborg, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

SUMMERS, Judge.

On November 13, 1992, the appellant, Frank A. Barnard, was found guilty of first-degree murder, felony murder, aggravated robbery and aggravated sexual battery.[1] Appellant received life imprisonment on the murder charge which ran concurrently with an eight-year sentence for aggravated robbery, but consecutively to a ten-year sentence for aggravated sexual battery. The trial court subsequently granted appellant's motion for new trial on the aggravated robbery count. On appeal, the following issues are presented for our review:

### I.

Whether the trial court erred in allowing the state to impeach appellant by use of a prior felony conviction.

### II.

Whether the trial court erred in the manner of its response to a question from the jury.

### III.

Whether the trial court erred in allowing the introduction of certain photographs of the victim.

### IV.

Whether the trial court erred in allowing a transcript of the appellant's statement to be read by the jury while the actual tape of the statement was being played.

### V.

Whether the trial court erred in allowing the medical examiner to testify as to both pre- and post-death injuries.

### VI.

Whether the trial court erred in allowing the testimony of the medical examiner on redirect examination.

### VII.

Whether the trial court erred in refusing to charge the jury with certain lesser-included offenses.

### VIII.

Whether the evidence was sufficient to support the verdict of guilt as to first-degree murder and aggravated sexual battery.

## FACTS

On the morning of September 18, 1990, the appellant was driving on Dickerson Road in Nashville, Tennessee. He was accompanied by Shane Janeksela and Robert Richmond, co-defendants in this case. The men stopped to pick up Mary Ann Poole, a prostitute who was working along the road, and then proceeded to Mr. Janeksela's house ostensibly to engage in sex. Although testimony differs as to each man's involvement, sometime during the course of the morning Ms. Poole was murdered.

---

1. The trial court merged the felony murder count with the first-degree murder count because they arose from the same offense.

Shane Janeksela testified that upon arriving at his residence, appellant handed him $20.00 and told him to take Ms. Poole to the bedroom. Janeksela led Ms. Poole to the bedroom and gave her the $20.00. She began to perform oral sex on him at which time the appellant and Robert Richmond entered the room. Appellant handcuffed Ms. Poole to the bed while Richmond covered her head with a sheet. They demanded that she give them her money, but she claimed to be broke. Appellant then found the $20.00 that Janeksela had given her and all three men then began to beat her. Afterwards, appellant and Richmond removed her clothes. Appellant placed a plastic bag over his fist and attempted to forcibly insert his fist into her vagina. He then held her down as Richmond sought to insert a wooden fork into her vagina. When this failed Richmond began to wildly punch and kick Ms. Poole whereupon the appellant and Janeksela left the room.

Richmond later entered the living room where the two other men were sitting. He asked the appellant to break the victim's neck. Appellant refused but instructed Richmond on how to do so. The three men then returned to the bedroom, and Richmond began twisting the victim's neck from side to side. Appellant and Janeksela left the room. At this time, Janeksela informed the appellant that he was extremely upset and did not want this to happen in his house. Appellant told him not to worry. Soon thereafter, Richmond began playing loud music. Janeksela and appellant reentered the bedroom and saw Richmond standing over the victim. He was singing. They turned the music off and Richmond again asked appellant how to kill the victim. Appellant told him to either "choke her" or "smother her." Richmond then placed a plastic bag over her head, and appellant and Janeksela left the room. Later, Richmond walked out of the bedroom and informed the men that Ms. Poole was dead. According to Janeksela, the appellant and Richmond placed the victim's body in Janeksela's car, and the three men drove to the appellant's home. Appellant refused to go any further. Richmond and Janeksela then drove to an abandoned area and dumped the body in the woods.

Grady Eleam, a detective with the Metropolitan Police Department, testified that he took a tape-recorded statement from appellant concerning the death of Mary Ann Poole. The taped statement was then played to the jury. In the statement, appellant admitted placing a pair of handcuffs on the victim and later removing the handcuffs. He denied any other involvement with the victim, but stated that he witnessed Richmond and Janeksela beat her. Appellant also denied assisting in the removal and disposal of the victim's body, although he was aware that the body was in the car while he was being driven home.

Appellant testified at trial. He acknowledged having been with Janeksela and Richmond on the morning in question. He also admitted placing a pair of handcuffs on the victim because he believed "they were into kinky sex." He stated, however, that the victim consented to the use of the handcuffs. Afterwards, appellant went into the living room for a few minutes, reentered the bedroom to remove the handcuffs, and immediately returned to the living room. He remained there until Janeksela and Richmond informed him that they had killed the victim. Appellant testified that because there was loud music being played at the time he had no knowledge of what was taking place in the bedroom. Upon being informed the victim was dead, he asked to be taken home. Appellant denied any involvement in the removal and disposal of the victim's body.

## I.

Appellant was convicted of sexual battery in California on September 14, 1987. Prior to trial, defense counsel apparently motioned for appellant's prior conviction to be excluded from use as impeachment evidence. The court indicated that it was inclined to grant such a motion. Before appellant's case-in-chief, defense counsel renewed its motion to the trial court. At this point, the state proposed that it be allowed to elicit the fact of a conviction without establishing the particular offense for which appellant had been convicted. The court agreed to the state's proposal over defense counsel's objections. On cross-

examination, the state impeached appellant by proof of his prior conviction.

Appellant now raises two objections to the use of his prior conviction. First, he contends that the state failed to comply with Rule 609(a)(3) of the Tennessee Rules of Evidence by not providing him with timely written notice of the prior conviction and the expected use thereof. He also contends that the trial court erred in the manner in which it allowed his prior conviction to be introduced on cross-examination.

■■■ Rule 609(a)(3) provides that "the State must give the accused reasonable written notice of the impeaching conviction before trial." This means that the state must notify the appellant in writing that it intends to use a prior conviction to impeach the accused's credibility at trial. *State v. Farmer*, 841 S.W.2d 837, 839 (Tenn.Crim.App. 1992).

At the motion for new trial, the prosecution stated that it sent a discovery response to defense counsel outlining appellant's criminal record. The actual notice requirement of Rule 609(a)(3) was not satisfied, however, because the state failed to inform the appellant of its intention to use the prior conviction for impeachment purposes. Nevertheless, the appellant does not appear to have been unduly prejudiced by the state's non-compliance, and we find the error to be harmless beyond a reasonable doubt. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a).

■■■ We also find that the trial court erred in permitting the state to use appellant's prior conviction to impeach his testimony. The trial court initially ruled to exclude the criminal conviction; however, upon further argument by the state, the court concluded that withholding the nature of appellant's prior offense would mitigate the prejudicial effect to appellant and allow for proper impeachment.

Pursuant to Rule 609(a)(3) the trial court must "determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." In making this determination, a court should:

(1) Assess the similarity between the crime on trial and the crime underlying the impeaching conviction; and

(2) Analyze the relevance the impeaching conviction has to the issue of credibility.

*State v. Farmer*, 841 S.W.2d at 839 (quoting N. Cohen, D. Paine, and S. Sheppeard *Tennessee Law of Evidence*, § 609.9, at 288 (2d ed. 1990)). Applying these criteria to the conviction in the present case we believe that the trial court was initially correct in not allowing the state to use appellant's previous conviction for impeachment purposes. Appellant's prior conviction for sexual battery was so similar to the current charge of aggravated sexual battery that undue prejudice would likely result. Furthermore, the probative value of a conviction for sexual battery to impeach the testimony of an accused is slight. As this Court previously noted, "crimes which involve violence or are of an assaultive nature may result from a short temper, a combative nature, extreme provocation, or other causes generally having little or no direct bearing on honesty or veracity." *Long v. State*, 607 S.W.2d 482, 485–86 (Tenn. Crim.App.1980).

Although we agree that the trial court minimized the prejudicial impact by limiting impeachment evidence to the mere fact that appellant had a prior felony conviction, we believe admission in this instance was error. As previously noted, the probative value of appellant's prior conviction on the issue of credibility was slight. Moreover, the prejudicial effect, while mitigated, could have allowed the jury to unnecessarily speculate as to the type of felony actually committed. As such, the unfair prejudicial effect of the prior conviction outweighed its probative value. Nevertheless, because of the strong proof of guilt in this case, we find the error to be harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a). This issue is without merit.

## II.

In his next issue appellant contends that the trial court erred in the manner it gave additional instructions to the jury.

After closing arguments, the trial court charged the jury which then retired for deliberations. After several hours, the jury sent a note to the judge requesting an answer to the following question:

If the defendant was present and had knowledge that the offense was being committed and he actively participated in the commission of the offense, is he guilty of the offense even though he personally did not strike the fatal blow?

Before a response to the question could be framed, the jury reported that it had reached a verdict. Upon returning to the courtroom, the trial judge polled the jurors as to whether they were satisfied with the verdict despite their question not having been answered. One juror responded that she was satisfied with the verdict, but wanted to know the answer anyway. The judge stated that "the answer to your question is in the charge I've given you." He then placed paper clips to mark the applicable portions of the charge for the jury's reference, and made a series of explanatory remarks, in large part rereading the original charge on the issues of accomplice liability and facilitation. The jury retired and returned eight minutes later with its verdict.

 Rule 30(c) of the Tennessee Rules of Criminal Procedure clearly states that all instructions to the jury are required to be reduced to writing before being given to the jury. However, it is not error for a court to repeat certain portions of the charge in response to a jury's request. *Monday v. Millsaps,* 264 S.W.2d 6, 21 (Tenn.Ct.App.1953).

The record shows that the trial court, in response to the jury's question, reread the language contained in the original charge concerning the definition of accomplice liability and facilitation. While there were also a few extemporaneous remarks made by the trial judge we do not believe that they affected the jury verdict. Because the judge's statements did not differ from or alter the charge that had previously been given in writing, we do not believe that any writing was required. Any error was clearly harmless. T.R.A.P. 36(b). This issue is without merit.

### III.

Appellant next contends that the trial court erred in allowing the admission of certain photographs of the victim into evidence due to their gruesomeness. Appellant argues that the prejudicial effect of the photographs outweighed their probative value and therefore they should have been excluded from evidence.

 In determining the admissibility of photographs, the court must determine that the evidence is relevant to the issues at trial and then decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Banks,* 564 S.W.2d 947, 951 (Tenn.1978); Tenn.R.Evid. 403. The admissibility of photographs falls within the sound discretion of the trial court whose ruling will not be overturned except upon a clear showing of an abuse of discretion. *Banks,* 564 S.W.2d at 949.

The photographs in question show the body of the victim at the wooded location in which it was found. One of the photographs was taken at a distance and shows the victim's head covered with a plastic bag as well as a number of bruises and wounds. The other photograph is a closeup of the victim's torso showing greater detail of the victim's wounds and bruises. The latter photograph was introduced as an aid to the testimony of the medical examiner, while the former photograph was used to corroborate Janeksela's version of the killing by showing a plastic bag over the victim's head. Neither of the photographs in question are particularly gruesome or horrific. We therefore agree with the trial court that the probative value of this evidence outweighed its prejudicial effect. The trial court properly admitted the photographs into evidence. This issue is without merit.

### IV.

In appellant's next issue, he contends that the trial court erred in allowing the jury to read a transcript of his statement to the police while the actual tape of the statement was being played. He argues that the use of the transcript in addition to the tape unduly emphasized the contents of his statement and violated the best evidence rule.

 It is well-settled in Tennessee that a transcript of a tape may be given to a jury where the jury is instructed that the tape,

and not the transcript is the actual evidence. *State v. Mosher,* 755 S.W.2d 464, 469 (Tenn. Crim.App.1988); *State v. Smith,* 656 S.W.2d 882, 888 (Tenn.Crim.App.1983). In the present case, the trial court properly instructed the jury and we find no error. This issue is without merit.

## V.

Appellant next contends that the trial court erred in allowing the medical examiner to testify as to post-death injuries.

During the state's case-in-chief, Dr. Gretel Harlan, the medical examiner who performed the autopsy on the victim, Mary Ann Poole, testified as to her findings. Dr. Harlan gave a comprehensive account of the number of cuts, bruises, scraps, contusions, lacerations, and other injuries inflicted on the body both before and after the victim's death. The defense objected to the testimony concerning the victim's post-death injuries, but the trial court overruled its objection.

Appellant contends that the testimony as to postmortem injuries had little or no probative value and served only to inflame the jury. We disagree.

Evidence of injury to the victim after death is relevant in that it helps establish intent, a necessary element of first-degree murder. While there is no proof that appellant struck the victim after her death, this ignores the question of accomplice liability. Nor do we find, as appellant contends, that the probative value of this evidence was greatly outweighed by its prejudicial effect. Tenn.R.Evid. 403. This issue is without merit.

## VI.

Appellant next contends that the trial court erred in allowing cumulative testimony by the medical examiner on redirect examination.

On direct examination, the state questioned Dr. Harlan concerning the amount of time it had taken for the victim to die from the injuries she received, to which Dr. Harlan responded:

Because the injuries were inflicted with a good amount of force, one person by themselves would not have been able to have inflicted these injuries quickly. Even two people would have had to repeatedly hit her.... And, the sort of injuries and the force required to inflict them would have made it very difficult for somebody, even physically strong and in good physical shape ... to continue to hit her for that long a time without taking breaks, or without having alternating between more than one person ...—I would suspect that this took an excess of an hour.

On redirect examination, the state asked Dr. Harlan the following question:

Q. Dr., ... based upon your autopsy and your investigation ... do you have an opinion as to the beating activity—beating of this woman and how many individuals could have been involved?

Defense counsel objected to this question on the ground that the doctor had already testified that it was her opinion that it had taken two people to inflict the beating. The trial court overruled the objection and the doctor went on to testify that while it was "possible" for the beating to have been administered by a single person, it would have been "easier for more than two" people to have inflicted the beating.

The admissibility of testimony and other evidence as well as the scope of redirect examination is within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion. *State v. Banks,* 564 S.W.2d 947, 949 (Tenn. 1978); *State v. Elrod,* 721 S.W.2d 820, 823 (Tenn.Crim.App.1986). Furthermore, it is within the discretion of the trial court to allow a party on redirect examination to supply testimony omitted by oversight, or to clarify testimony given on direct examination, or, where the facts thus developed are not inconsistent with his previous answers to ask a witness to expand his testimony. 98 *Corpus Juris Secundum, Witnesses,* § 419, at 223.

We do not find that the trial judge abused his discretion in this matter. The doctor's testimony on redirect can be seen as a clarification or expansion of her testimony on direct. This issue is without merit.

## VII.

Appellant next contends that the trial court erred in refusing to charge the jury on the elements of sexual battery, assault, and aggravated assault.

When there are any facts that are susceptible of inferring guilt of a lesser-included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. *State v. Wright,* 618 S.W.2d 310, 315 (Tenn.Crim.App. 1981). However, a court is not required to charge the jury on lesser-included offenses when there is no evidence in the record to support a finding of guilt on the lesser offenses. *State v. Mellons,* 557 S.W.2d 497, 499 (Tenn.1977); *State v. Davis,* 649 S.W.2d 12, 14 (Tenn.Crim.App.1982).

In count five of appellant's indictment he was charged with the offense of aggravated sexual battery. Appellant requested as an additional charge the lesser-included offense of sexual battery which was denied by the trial judge. Appellant now contends that there is abundant evidence in the record to show that he was guilty of only sexual battery and not aggravated sexual battery. He points to his own testimony in which he admitted putting handcuffs on the victim so that the co-defendants could engage in sexual activity with her as well as the fact that he denied any participation in the harming of the victim.

We find no merit to appellant's argument. Even accrediting the appellant's testimony, the victim received great bodily injury after the handcuffs were placed on her. Thus, appellant would either have been found guilty of aggravated sexual battery under the theory of accomplice liability or facilitation or would not have been found guilty at all. There is no credible evidence upon which to base a charge of sexual battery. This issue has no merit.

Appellant also contends that the trial judge should have charged the jury on the elements of aggravated assault and simple assault as lesser-included offenses of the charge of first-degree murder. Again, we find there to be no credible view of the evidence under which appellant could have been found guilty of these lesser-included offenses. This issue is without merit.

## VIII.

In his last issue, appellant contends that the evidence is insufficient to support the jury verdict of first-degree murder, felony murder, aggravated robbery, and aggravated sexual battery. Because appellant's felony murder conviction and judgment were merged into his first-degree murder conviction, and because appellant's motion for a new trial was granted on the count of aggravated robbery, we confine our discussion to the sufficiency of the evidence as to first-degree murder and aggravated sexual battery.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978).

Appellant's primary assertion in this regard is that the testimony of Mr. Janeksela, a co-defendant in this case, was completely

uncorroborated by other proof. He further asserts that Mr. Janeksela's testimony is not credible and insufficient to convict him of the crimes in question.

Appellant's attack on the evidence appears to be twofold: (1) that the testimony of Janeksela is uncorroborated, and (2) that it is not credible because Janeksela is "a liar."

As to appellant's first argument he implies that Janeksela is an accomplice and thus his testimony alone cannot support a conviction.

An accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime. *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn.Crim.App.1992). A defendant cannot be convicted upon the uncorroborated testimony of an accomplice. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34, 43 (1964).

We find there to have been sufficient corroboration in the present case. An accomplice's testimony is deemed sufficiently corroborated by evidence placing a defendant at the scene of the crime as described by the accomplice. *State v. Martin*, 743 S.W.2d 936, 938 (Tenn.Crim.App.1987); *State v. Webb*, 625 S.W.2d 281, 284 (Tenn.Crim.App.1980). Indeed, it was appellant himself who testified that he was at the house at the time of the victim's death and placed handcuffs on her prior to her beating.

As to appellant's argument that Janeksela's testimony was unreliable and not credible, the law is well-settled that the credibility of all witnesses and the weight of their testimony are matters entrusted exclusively to the jury. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn.1990); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

We find the evidence to be more than sufficient to prove appellant's guilt beyond a reasonable doubt. This issue is without merit.

The judgment of the trial court is AFFIRMED.

SCOTT, P.J., and TIPTON, J., concur.