**STATE of Tennessee, Appellee,**

v.

**Ronald SUMMERALL, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 28, 1995.

W. Mark Ward (on appeal) (A.C. Wharton, Shelby County Public Defender, of counsel) Carolyn Watkins, and Ronald Johnson (at trial), Asst. Public Defenders, Memphis, for Appellant.

Charles W. Burson, Attorney General and Reporter, Cecil H. Ross, Assistant Attorney General, Nashville, John W. Campbell, and Phillip Gerald Harris, Asst. District Attorneys General, Memphis, for Appellee.

## OPINION

WADE, Judge.

The defendant, Ronald Summerall, indicted for first degree murder, was found guilty of second degree murder. The trial court imposed a Range II sentence of forty years and ordered the term to be served consecutively to a sentence in an unrelated conviction.

In this appeal, the defendant challenges the sufficiency of the evidence and presents the following additional issues for our review:

(1) whether the trial court erred by allowing the state to impeach the defendant based upon an unnamed prior felony conviction;

(2) whether the trial court erred by allowing Officer Kirby Brewer to testify to hearsay statements by the victim pursuant to Tenn.R.Evid. 803(2); and

(3) whether the trial court erred by failing to instruct the jury on voluntary manslaughter.

Because the trial court failed to charge the lesser included offense of voluntary manslaughter, the judgment must be reversed. A new trial is ordered.

On October 27, 1992, the defendant had a fight with Elbert Tate and Tate's brother. As Elbert Tate walked down a street at about 5:00 P.M. on the following day, he saw the defendant at the side of a building "cocking a gun back, and ... saying something like 'I'm going to get you.'" Tate then saw the victim, Bobby Richmond, and they walked together for a short distance until Tate went into an alley to check on something to do with his car. When Tate returned to the street, he heard several shots, one of which struck the victim in the back. The victim then turned to Tate and said that "he seen Cocaine (a nickname for the defendant) and saw him shoot." Tate, who testified that he was unarmed, and the victim fled in different directions.

Officer Kirby S. Brewer, a patrolman with the Memphis Police Department, found the conscious victim lying face down. When he asked who had shot him, the victim initially claimed that he did not know but then repeatedly alleged that "Cocaine did it."

J.A. Wilburn, a sergeant with the Memphis Police Department, testified that the defendant called his office the day after the shooting and asked if the police needed to talk to him. When Wilburn said yes, the defendant indicated that he would turn himself in but failed to do so. About a week after the shooting, Patrol Officers R.D. Burton and B.G. Winston went to a local residence in an attempt to locate and arrest the defendant. When they arrived, the defendant fled through a window. The officers chased the defendant about four blocks and eventually caught him hiding behind a parked vehicle in the carport of a residence.

Sergeant Wilburn testified that the defendant admitted that he had shot the victim; the defendant claimed that Tate and Tate's brother had beaten him up the day before the shooting. The defendant contended that he had tried to shoot Tate and had mistakenly struck the victim instead. Sergeant Wilburn testified that the defendant never

claimed that either the victim or Tate were armed or that he was afraid at the time of the shooting.

Doctor O'Brian Cleary Smith, a medical examiner with the Shelby County Medical Examiner's Office, performed the autopsy. He testified that the victim had received a gunshot wound to the back of his left shoulder and that the bullet had passed through three major veins. The victim died from the loss of blood.

The defendant testified in his own defense. He denied having made any statement to the police but admitted having fought with Tate the day before the shooting. The defendant claimed he had been beaten up by Tate.

The defendant testified that he had been playing basketball and was sitting on some steps eating when he heard gunshots. When he looked up, he saw Tate running toward him firing a weapon. The defendant stated that six or seven shots had been fired before he reacted by grabbing his own gun and firing one shot as he fled the scene. The defendant testified that he saw no one other than Tate and did not realize he had hit anyone.

The defendant denied that his nickname was "Cocaine." He admitted, however, that he had called the police, had failed to turn himself in, and had fled when the police had attempted to make an arrest.

■ When the defendant challenges the sufficiency of the evidence on appeal, the state is entitled to the strongest legitimate view of the trial testimony and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App.1978). The relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465

U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); Tenn.R.App.P. 13(e). A crime may also be established by the use of circumstantial evidence only. *State v. Tharpe,* 726 S.W.2d 896, 899–900 (Tenn.1987); *Marable v. State,* 203 Tenn. 440, 451–52, 313 S.W.2d 451, 457 (1958).

■ Second degree murder is defined as a "knowing killing of another." Tenn.Code Ann. § 39–13–210.

"Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn.Code Ann. § 39–11–302(b).

■ The defendant acknowledged that he had fired the fatal shot. Before his death, the victim identified "Cocaine" as his assailant. Tate confirmed that the defendant bore the nickname "Cocaine" and testified that the defendant had threatened him shortly before the victim was shot. The state presented testimony that both Tate and the victim were unarmed. That the defendant fired at Tate rather than the victim has no legal effect. The doctrine of transferred intent would apply. *See State v. George Henry,* No. 02C01–9212–CR–00266, 1993 WL 414010 (Tenn. Crim.App., at Jackson, October 20, 1993), *perm. to app. denied,* (Tenn.1994). That the jury chose to accredit the testimony of the prosecution witnesses and reject that of the defense witnesses is within their prerogative. A rational trier of fact could have found the essential elements of the crime of second degree murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

I

■ The defendant next claims that the trial court erred by allowing the state to impeach the defendant's credibility with an

unnamed prior felony conviction.[1] He complains that this allowed the jury to engage in unwarranted speculation about the specific nature of the felony.

Originally, the defendant had objected to the state's use of a prior second degree murder conviction for impeachment purposes. The defendant claimed that its prejudicial effect outweighed its probative value under the terms of Tenn.R.Evid. 609(a)(3). Although the trial court initially agreed to exclude the prior conviction, it ultimately permitted the state to introduce the prior felony for the sole purpose of impeachment but on the condition that the specific nature of the felony remain undisclosed.

During the cross-examination of the defendant, the state was allowed to ask the following questions:

Q: Now, are you the same Ronald Summerall who was convicted in Indictment number 85–05729 of the offense of attempted felony?

A: Yes.

Q: That was in December of 1985; is that correct?

A: Yes.

Q: Are you the same Ronald Summerall who was convicted in Indictment number 89–06732, February 23, 1990, for a felony?

A: Yes.

Q: You are the same person?

A: Yes.

No other questions pertained to the defendant's prior record.

■ The Tennessee Rules of Evidence provide that a judgment of conviction may be used by the state to generally impeach the testimony of the defendant. *See State v. Morgan,* 541 S.W.2d 385 (Tenn.1976). Tennessee Rules of Evidence 609(a)(2) and (3) specifically provide as follows:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

\* \* \* \* \* \*

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value *on credibility* outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(Emphasis added); *see State v. Farmer,* 841 S.W.2d 837, 839 (Tenn.Crim.App.1992). The defendant does not challenge the procedural requirements of the rule.

■ In determining whether the probative value of a prior conviction on the issue of credibility is outweighed by its prejudicial effect on the substantive issues, a trial court should "(a) 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction,' and (b) 'analyze the relevance the impeaching conviction has to the issue of credibility.'" *State v. Farmer,* 841 S.W.2d at 839 (quoting N. Cohen, D. Paine, and S. Sheppeard, *Tennessee Law on Evidence,* § 609.9 at 288 (2d ed. 1990)); *see also State v. Jerry Lee Finch,* No. 02C01–9309–CC–00224, 1995 WL 334350 (Tenn.Crim.App., at Jackson, June 7, 1995). Here, the trial court considered these factors and determined that the prior conviction for second degree murder should not be admitted since the defendant was facing a murder

---

1. This reference is to a conviction for attempted breaking into and burglarizing a vehicle. It is not challenged here.

charge in this case. In our view, the trial court acted in accordance with the rules to this point. The question is whether it was error for the state to be permitted to use the same felony so long as the specific nature of the felony was not disclosed to the jury.

This court has addressed a similar question in at least two prior cases. In *State v. Ross Jones,* No. 01C01–9405–CR–00175, 1995 WL 50044 (Tenn.Crim.App., at Nashville, Feb. 8, 1995), *perm. to appeal denied concurring in results only* (Tenn.1995), the trial court allowed the state to refer to the defendant as having six prior convictions of "felonies involving dishonesty" rather than naming the felonies due to their similarity to the charged offense. Slip op. at 8. While acknowledging that Rule 609 did not provide for this alternative method of impeachment, a panel of this court ruled that it was not error to utilize the unnamed felonies to attack the credibility of the defendant. *Id.* In *State v. Frank Anthony Barnard,* 899 S.W.2d 617 (Tenn.Crim.App.1994), *perm. to appeal denied* (Tenn.1994), a second panel of this court reached a different result. The defendant had been charged with several offenses, including aggravated sexual battery. He sought to exclude any evidence of a prior conviction for sexual battery. The state proposed that it be allowed to ask about the prior conviction without identifying the nature of the offense. The trial court permitted impeachment through a "generic" felony. On appeal, this court reversed:

> Although we agree that the trial court minimized the prejudicial impact by limiting impeachment evidence to the mere fact that appellant had a prior felony conviction, we believe admission in this instance was error. As previously noted, the probative value of appellant's prior conviction on the issue of credibility was slight. Moreover, the prejudicial effect, while mitigated, could have allowed the jury to unnecessarily speculate as to the type of felony actually committed. As such, the unfair prejudicial effect of the prior conviction outweighed its probative value.

*Id.* at 622.

■ The prior convictions in *Jones* involved dishonesty; traditionally, a prior crime involving dishonesty has been deemed to be especially probative and, therefore, almost always admissible for the purpose of impeachment. In *Barnard* the convictions did not. Because the defendant's prior offense here did not involve dishonesty, the case is more closely aligned with the facts in *Barnard.* Rule 609(a)(3) provides that the probative value of the prior conviction on the issue *of credibility* must outweigh its prejudicial effect on the substantive issues; "crimes which involve violence or are of an assaultive nature may result from a short temper, a combative nature, extreme provocation, or other causes generally having little or no direct bearing on honesty or veracity." *Long v. State,* 607 S.W.2d 482, 485–86 (Tenn.Crim. App.1980); *see also State v. Farmer,* 841 S.W.2d at 840. Based upon this precedent, it would appear that a "generic" felony provides inadequate information for the jury to properly weigh its probative value. While this is a close case, the ruling in *Barnard,* which bears the approval of our supreme court, is the more persuasive authority.

■ Having found that the prior conviction should have been altogether excluded, we turn to whether the error "more probably than not affected the judgment." Tenn. R.App.P. 36(b). Here, the state impeached the defendant with a second felony. Although it was identified only as an "attempted felony," the conviction was admitted without objection. Whether the defendant had one or two prior felony convictions, in the context of the entire record, probably had no effect on the verdict. Thus, we would conclude that the error here was harmless.

## II

■ The defendant next claims that the trial court erred by allowing Officer Kirby to testify to the victim's statements under the excited utterance exception to the rule against hearsay. *See* Tenn.R.Evid. 802 and 803(2). He argues that the statement did not qualify as an excited utterance because the victim did not immediately tell the police who had fired the shot.

Under the terms of Tenn.R.Evid. 803(2), "[a] statement relating to a startling event or

condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an exception to the rule against hearsay. Here, the victim had just been shot. To say that he had been emotionally affected by the incident would qualify as a classic understatement. That is a safe inference. The officer described the victim's speech pattern as very "rapid" and "excited." The shooting clearly qualified as a startling event. In our view, the statement was properly admitted.

■ Elbert Tate also testified that the victim, immediately after the shooting, cried out that "Cocaine" had shot him. The defendant did not object to the admission of this statement. Under these circumstances, even if any error had occurred in the admission of the hearsay statement of the victim, the officer's testimony was cumulative and any error, in our view, would have been harmless.

### III

■ As his final issue, the defendant claims that the trial court committed reversible error by failing to instruct the jury on the lesser included offense of voluntary manslaughter. The defendant claims that there was evidence that he acted with passion produced by adequate provocation to warrant instruction on voluntary manslaughter. The state argues that the evidence supported either second degree murder or self-defense and that no evidence of provocation was presented. We must agree with the defense.

■ The trial judge has a duty to give a complete charge of the law applicable to the facts of the case. *State v. Harbison,* 704 S.W.2d 314, 319 (Tenn.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). It is settled law that when "there are any facts that are susceptible of inferring guilt on any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. Failure to do so denies a defendant his constitutional right of trial by a jury." *State v. Wright,* 618 S.W.2d 310, 315 (Tenn.Crim.App.1981) (citations omitted); Tenn.Code Ann. § 40–18–110. When there is a trial on a single charge of a felony, there is also a trial on all lesser included offenses,

"as the facts may be." *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224, 227 (1962). Trial courts, however, are not required to charge the jury on a lesser included offense when the record is devoid of evidence to support an inference of guilt of the lesser offense. *State v. Stephenson,* 878 S.W.2d 530, 550 (Tenn. 1994); *State v. Boyd,* 797 S.W.2d 589, 593 (Tenn.1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991); *State v. Dulsworth,* 781 S.W.2d 277, 287 (Tenn.Crim. App.1989).

■ Here, the defendant was charged with first degree murder. The lesser included offense of second degree murder was properly included in the jury charge. Voluntary manslaughter is also a lesser included offense of first degree murder. *See Howard v. State,* 506 S.W.2d 951 (Tenn.Crim.App. 1973). It is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn.Code Ann. § 39–13–211(a).

The defendant testified that he feared Tate. Although the far greater weight of the evidence indicated otherwise, the defendant claimed that he fired the fatal shot only after Tate had fired several shots in his direction. The defendant claimed that he feared for his safety because he was aware that Tate, on prior occasions, had shot at other individuals. These facts provided at least some support to the defense theory that Tate had either provoked the defendant or that the two men were involved in mutual combat.

Although the trial court charged the jury on the issue of self-defense, it did not provide any instructions on the offense of voluntary manslaughter. Throughout the closing argument, the state acknowledged that the jury would receive a charge on voluntary manslaughter but argued that the evidence did not support a claim of provocation. The state gave examples of what it deemed would be a proper case of voluntary manslaughter and referred to the offense as a "discount card" in the criminal justice system; the state argued to the jury that the defendant was not entitled to a "discount."

█ The defendant's version of events, even if uncorroborated, presented a factual issue that could only be resolved by the jury. The overriding principle is that if there is any evidence in the record from which the jury could have concluded that the lesser included offense was committed, there must be an instruction for the lesser offense. *See Johnson v. State,* 531 S.W.2d 558, 559 (Tenn. 1975). Ruling otherwise effectively deprived the defendant of a jury trial on the lesser included offense. Whether there was adequate evidence of provocation by Tate to warrant consideration of voluntary manslaughter should have been submitted to the jury.

Recently, Judge Welles spoke for this court in ruling that the omission of a lesser included offense from the charge to the jury always requires a new trial. *State v. Dhikr Abban Boyce,* 920 S.W.2d 224 (Tenn.Crim. App.1995). The opinion included a quote from *Poole v. State,* 61 Tenn. 288 (1872):

> However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of the offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury.

*Id.* at 294.

The evidence of provocation, although far from overwhelming, presented a factual issue at trial. Thus, voluntary manslaughter should have been charged to this jury as a lesser included offense. Accordingly, the judgment of the trial court is reversed. This cause is remanded for a new trial.

JONES, P.J., and JOHN K. BYERS, Senior Judge, concur.