**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**SEPTEMBER SESSION, 1997**

**FILED**

**November 20, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9611-CR-00424** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **SHELBY COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JAMES C. BEASLEY, JR.** |
| **RAY L. TAYLOR,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Aggravated Burglary & Theft) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF SHELBY COUNTY**

FOR THE APPELLANT:

A.C. WHARTON
Public Defender

TONY N. BRAYTON
Assistant Public Defender
201 Poplar, Suite 2-01
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

CLINTON J. MORGAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

JERRY R. KITCHEN
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Ray L. Taylor, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Shelby County jury of one count of aggravated burglary and one count of theft of property valued in excess of one thousand dollars ($1000) but less than ten thousand dollars ($10,000).[1] The trial court sentenced him as a Range III persistent offender to twelve years imprisonment with the Department of Correction on each count, with the sentences to run concurrently. In this appeal, the Defendant argues that the evidence was legally insufficient to support the verdicts and that the trial court erred in ruling that his prior convictions were admissible for impeachment purposes. We affirm the judgment of the trial court.

We begin with a summary of the pertinent facts. On the morning of March 2, 1995, Pamela Mosley left her home, located at 4578 Gailwood in Memphis, Tennessee, and went to work. She later received a telephone call at work informing her that her house had been burglarized. She then returned home to find that several items which had been in the home when she left that morning were missing. The front door to her home had been pried open and her bedroom had been ransacked. Among the missing items were jewelry boxes containing a large amount of jewelry, a coin collection, several handguns, a flashlight and a blue duffel bag. She estimated the value of the missing items at seven thousand dollars ($7000).

---

[1] Tenn. Code Ann. § 39-14-403; 39-14-103; 39-14-105(3).

Two of Mosley's neighbors, Deborah Christine Roberts and Martha Sherwood, noticed an unfamiliar individual approach Mosley's home on the morning of March 2, 1995. Both Roberts and Sherwood later identified the Defendant as this individual. The Defendant was driving an older-model Cadillac. He parked the car next to Mosley's house, left the car running, and approached Mosley's front door. He did not appear to be carrying anything as he approached the house. He knocked on the front door, turned around, and looked up and down the street. Martha Sherwood testified that the Defendant then turned toward the door, the door opened, and the Defendant entered the home. After approximately ten to fifteen minutes, the Defendant exited the home carrying a blue duffel bag and a brown box resembling a briefcase. He tossed these items into the Cadillac and drove away.

During the time the Defendant was in Mosley's home, both Roberts and Sherwood gained more information about his car. Sherwood drove around the block and noted that the Cadillac had a Lauderdale County license plate. Roberts sent an individual from her home to write down the license plate number of the Cadillac. After the departure of the Defendant, the witnesses called 911.

The Defendant was arrested on the following day, March 3, 1995. At the time of his arrest, he was driving an older-model Cadillac matching the description of the Cadillac given by Sherwood and Roberts. The Cadillac had a Lauderdale County license plate with a tag number matching the number Roberts had taken from the car parked in front of Mosley's home the previous day.

None of the items missing from Mosley's home were discovered in the Defendant's vehicle. In fact, the items missing from Mosley's home were never recovered. In addition, Elton Smith, an investigator with the Burglary Bureau of the Memphis Police Department, testified that the crime scene officer did not check Mosley's home for fingerprints. As such, the Defendant's fingerprints were not linked to the scene of the crime.

On May 30, 1995, the Defendant was indicted on charges of aggravated burglary and theft of property. He was tried from February 20 to February 22, 1996. After considering the proof presented at trial, the jury found the Defendant guilty as charged.

In his first issue on appeal, the Defendant argues that the evidence was legally insufficient to support the verdicts. In particular, he contends that the proof was not sufficient to establish his identity as the perpetrator. He asserts that eyewitness identification testimony is inherently untrustworthy, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). He points out that none of the victim's property was recovered from his vehicle and no scientific fingerprint evidence linked him to the scene of the crime. Thus, given that it was eyewitness testimony that linked him to the crime, he argues that the eyewitness testimony offered at trial was insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. <u>Cabbage</u>, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>Grace</u>, 493 S.W.2d at 476.

Applying these principles to the case <u>sub judice</u>, we believe that the evidence was legally sufficient to support the verdicts. The Defendant was positively identified by two eyewitnesses as the individual who entered the victim's home on March 2, 1995. He approached the home carrying nothing but returned to his car carrying a blue duffel bag and a brown box resembling a briefcase. The victim returned home shortly after the Defendant's departure to find that her front door had been pried open and her bedroom ransacked. Among the numerous items missing from the home was a blue duffel bag. The victim

estimated the value of the missing items at seven thousand dollars ($7000). The Defendant was arrested the following day. At the time of his arrest, he was driving a car matching the general description given by the witnesses. Moreover, the license plate number matched the one taken from the car at the scene of the crime.

It is well-established in Tennessee that the identity of the accused as the perpetrator of the offense charged is a question of fact for the determination of the jury. State v. Shelley, 628 S.W.2d 436, 438 (Tenn. Crim. App. 1981); State v. Livingston, 607 S.W.2d 489, 491 (Tenn. Crim. App. 1980). After considering the record, we can only conclude that there was sufficient proof for the jury to have found the elements of aggravated burglary and theft of property beyond a reasonable doubt. See Tenn. Code Ann. §§ 39-14-403(a), 39-14-103. Furthermore, there was sufficient proof to establish that the Defendant was the perpetrator of the offenses. The Defendant's first issue therefore lacks merit.

In his second issue on appeal, the Defendant argues that the trial court erred in ruling that his prior convictions were admissible for impeachment purposes. It appears from the record that the Defendant had a prior conviction for petit larceny and several prior convictions for burglary. Prior to trial, the Defendant moved the trial court to exclude his prior convictions for impeachment purposes. The trial court initially granted the Defendant's motion, finding that the prejudicial effect of the prior convictions, given their similarity to the offenses charged, outweighed their probative value. See Tenn. R. Evid. 609(a)(3). On the following day, the prosecutor presented research on the issue and requested that the trial judge reconsider his ruling. After considering the research offered by the

prosecutor, the trial judge qualified his ruling, stating that he would allow the prosecutor to impeach the Defendant by asking him if he had been convicted of "felonies involving dishonesty." The specific nature of the prior convictions would not be revealed. The trial court based the ruling on State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995), and State v. Ross Jones, C.C.A. No. 01C01-9405-CR-00175, Davidson County (Tenn. Crim. App., Nashville, Feb. 8, 1995), perm. to appeal denied concurring in results only (Tenn. 1995). In the wake of this ruling, the Defendant elected not to testify at trial.

On appeal, the Defendant contends that the trial court erred in ruling that his prior convictions were admissible for impeachment purposes. He asserts that given the similarity between the prior convictions and the offenses charged, the admission of the prior convictions would result in undue prejudice outweighing their probative value. Furthermore, he argues that the trial court's attempt to minimize the prejudicial effect by limiting referral to the prior convictions only as "felonies involving dishonesty" was improper. Citing State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994), he alleges that the use of "generic felonies" for impeachment purposes is misleading and promotes confusion in that it invites speculation on the part of the jury as to the nature of the prior convictions.

Of course, the Tennessee Rules of Evidence do provide that the State may use a judgment of conviction to impeach the testimony of the defendant. See Tenn. R. Evid. 609. Rule 609, however, sets forth several conditions which must be satisfied to allow for such impeachment. Among these conditions are the following:

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a)(2) - (3). In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction" and (b) "analyze the relevance the impeaching conviction has to the issue of credibility." State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992); Neil P. Cohen et al., Tennessee Law of Evidence § 609.9, at 376 (3d ed. 1995).

In the case sub judice, the trial court determined that because of the similarity between the charged offenses and the Defendant's prior convictions, the probative value of the prior convictions on credibility did not outweigh the unfair prejudicial effect on the substantive issues. Thus, the trial court ruled that the State could not impeach the Defendant with reference to the specific nature of his prior convictions. We believe the trial judge was correct in this determination. The trial court did, however, rule that the State could impeach the Defendant with reference to his convictions as "felonies involving dishonesty."

Such a procedure was followed in a very similar case recently before another panel of this Court. See State v. Ross Jones, C.C.A. No. 01C01-9405-CR-00175, Davidson County (Tenn. Crim. App., Nashville, Feb. 8, 1995), perm. to appeal denied concurring in results only (Tenn. 1995). In Jones, the defendant was charged with aggravated burglary. Id. at 2. He had six prior burglary convictions. Id. at 8. The trial court ruled that the State could not refer to the specific nature of the prior convictions when impeaching the defendant, but could ask him if he had been convicted of "felonies involving dishonesty." Id. On appeal, this Court stated that although "this method of identifying the convictions for impeachment purposes is not specifically provided for by Rule 609 of the Tennessee Rules of Evidence, we are unable to conclude that this action constitutes error under the circumstances of this case." Id.

The Defendant nevertheless contends that allowing the State to impeach him with reference to "felonies involving dishonesty" was improper. Citing State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994), he argues that the use of "generic felonies" for impeachment purposes is misleading to the jury and promotes confusion of the issues at trial because it invites the jury to speculate as to the nature of the impeaching felonies. In Barnard, the defendant was found guilty of first degree murder, aggravated robbery and aggravated sexual battery. Id. at 620. At trial, the State was permitted to impeach the defendant based on his conviction for sexual battery in California. The trial court allowed the State to elicit the fact of the conviction without referring to the specific nature of the offense. Id. at 621. On appeal, a panel of this Court concluded that the limited admission of the fact that the defendant had a prior felony conviction was error. Id. at 622. This Court commented as follows:

> Although we agree that the trial court minimized the prejudicial impact by limiting impeachment evidence to the mere fact that appellant had a prior felony conviction, we believe admission in this instance was error. As previously noted, the probative value of appellant's prior conviction on the issue of credibility was slight. Moreover, the prejudicial effect, while mitigated, could have allowed the jury to unnecessarily speculate as to the type of felony actually committed. As such, the unfair prejudicial effect of the prior conviction outweighed its probative value.

Id.

Barnard was decided shortly before the filing of Jones. Shortly after the filing of Jones, another panel of this Court confronted a situation similar to Barnard. See State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995). In Summerall, the defendant was indicted for first degree murder and convicted of second degree murder. Id. at 274. At trial, the State was permitted to impeach the defendant based on a prior conviction for second degree murder. Id. at 276. The trial court allowed the State to ask the defendant on cross-examination if he was "the same Ronald Summerall who was convicted in Indictment number 89-06732, February 23, 1990, for a felony." Id. On appeal, the Summerall court noted the prior decisions in both Barnard and Jones, pointing out that the case before them was "more closely aligned with the facts in Barnard" because the impeaching conviction did not involve dishonesty. Id. at 277. Based on the analysis of Barnard and Jones, the Summerall court went on to state that "it would appear that a 'generic' felony provides inadequate information for the jury to properly weigh its probative value. While this is a close case, the ruling in Barnard, which bears the approval of our supreme court, is the more persuasive authority." Id. As a result, the Summerall court concluded that it was error for the State to impeach the defendant with reference to his conviction "for a felony." Id.

Applying the principles from Barnard, Jones and Summerall to the case sub judice, we believe the trial court did not err in permitting the State to impeach the Defendant with reference to "felonies involving dishonesty." The case at bar, like Jones, is distinct from Barnard and Summerall. In both Barnard and Summerall, the impeaching conviction did not involve dishonesty and, as a result, was of minimal probative value on the issue of credibility. Summerall, 926 S.W.2d at 276-277; Barnard, 899 S.W.2d at 622. In the present case, as in Jones, the impeaching convictions do involve dishonesty. Jones, C.C.A. No. 01C01-9405-CR-00175, slip op. at 8; see State v. Miller, 737 S.W.2d 556, 559 (Tenn. Crim. App. 1987) (stating that burglary is a crime involving dishonesty for impeachment purposes). Obviously, the probative value of a prior conviction involving dishonesty on the issue of credibility is significant.

Furthermore, in both Barnard and Summerall, the State was permitted to impeach the defendant with reference only to "a felony." Summerall, 926 S.W.2d at 276-77; Barnard, 899 S.W.2d at 621-22. In the present case, as in Jones, the Defendant was to be impeached by reference to "felonies involving dishonesty." Jones, C.C.A. No. 01C01-9405-CR-00175, slip op. at 8. We believe that this method of impeachment not only minimizes unfair prejudicial impact by concealing the specific nature of prior convictions similar to the charged offense, but also minimizes the possibility of speculation by the jury as to the nature of the prior conviction. Impeachment with reference to "felonies involving dishonesty" rather than simply "felonies" focuses the jury's attention on the relevant issue, namely the credibility of the witness, rather than on the mere fact that the witness has a prior conviction. Coupled with a general jury instruction that such impeachment evidence may be considered only on the issue of credibility and not

as substantive evidence of guilt, we believe that the impeaching evidence's potential for an unfair prejudicial effect on the substantive issues is slight.

In the case sub judice, the impeaching convictions, although similar to the charged offenses, were highly relevant to the issue of credibility because they were crimes involving dishonesty. The trial court determined that under the restrictions governing the use of the Defendant's prior convictions for impeachment, their probative value on the issue of credibility outweighed their unfair prejudicial effect on the substantive issues. We cannot conclude that the trial court abused its discretion in ruling that the prior convictions would be admissible, in a limited manner, for the purpose of impeachment if the Defendant chose to testify.[2]

Moreover, even if we were to conclude that it was error to permit the State to impeach the Defendant with reference to "felonies involving dishonesty," the error is harmless under the circumstances of this case. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). The proof of the Defendant's guilt is quite strong. In addition, the Defendant did not make an offer of proof as to his proposed trial testimony. As such, we are unable to assess the full impact of the trial court's ruling that his prior convictions were admissible for impeachment purposes. See State v. Abraham Galmore, C.C.A. No. 02C01-9607-CR-00230, Shelby County (Tenn. Crim. App., Jackson, Sept. 9, 1997).

---

[2] The Defendant also argues that evidence of his prior convictions should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 403. Having already concluded that the trial court did not err in determining that the probative value of the limited impeachment evidence on credibility outweighed any unfair prejudicial effect on the substantive issues, we cannot conclude that the probative value was substantially outweighed by the danger of unfair prejudice. The Defendant's argument lacks merit.

For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal lack merit. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOE B. JONES, PRESIDING JUDGE

_____
JOE G. RILEY, JUDGE