IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
MAY SESSION, 1998

FILED

August 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )     No. 02C01-9708-CR-00309
     Appellee                )
                             )     SHELBY COUNTY
vs.                          )
                             )     Hon. W. Fred Axley, Judge
BRIAN J. HUNTER,             )
                             )     (Interlocutory Appeal)
     Appellant               )

<hr>

### DISSENTING OPINION

     Because I find that an instruction on the lesser grade offense of voluntary manslaughter was not warranted by the proof presented at trial, I am unable to join with the majority's conclusion. Accordingly, I would reverse and remand for dismissal of the indictment.

     Although the majority concludes, absent any lesser offense analysis, that the evidence is sufficient to support a conviction for voluntary manslaughter, I find such a review crucial in order to resolve the ultimate issue presently before this court. A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. This obligation includes giving instructions on lesser offenses included in the indictment, without any request on the part of the defendant. See Tenn. Code Ann. § 40-18-110(a)(1990). Nonetheless, it remains a principle well-established in the law of this state that, where there is no proof in the record to support an instruction on a lesser offense, no jury instruction on the same need be submitted. Elder, No. 03C01-9702-CR-00053 (citing Trusty, 919 S.W.2d at 311). See also Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995 (1973) (holding that there is no constitutional right to a jury instruction on a lesser offense in every case). Thus, a proper review of the issue before this court involves (1) a determination of the lesser

offenses of the offense charged in the indictment and (2) whether an instruction on any of the lesser offenses is warranted by the evidence. State v. Elder, No. 03C01-9702-CR-00053 (Tenn. Crim. App. at Knoxville, Apr. 23, 1998). See also State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996).

It is without dispute that voluntary manslaughter is a lesser offense of second degree murder as it is a lesser grade or class of that offense. See Elder, No. 03C01-9702-CR-00053 (citing Tenn. Code Ann. § 39-13-201 et seq. (1991)). Thus, the remaining question is whether such an instruction on voluntary manslaughter is warranted by the proof presented in the case sub judice.

The Due Process Clause of the Fourteenth Amendment entitles a defendant to an "instruction on a lesser . . . offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. at 208, 93 S.Ct. at 1995 (internal footnote omitted) (emphasis added); see also Trusty, 919 S.W.2d at 311. The court "must determine whether the evidence, when viewed in the light most favorable to the defendant's theory of the case, would justify a jury verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense." Elder, No. 03C01-9702-CR-00053(citations omitted).[1] Absent this standard, the trial judge who charges a lesser offense based upon less than sufficient evidence would be faced with the absurd necessity, predicated upon its own invited error, of entering a judgment of acquittal following the jury's guilty verdict on the lesser offense. Elder, No. 03C01-9702-CR-00053 (citations omitted). Moreover, to employ a lesser standard in determining which lesser offenses need be instructed invites the jury to return a compromise or otherwise unwarranted verdict. Elder, No. 03C01-9702-CR-00053 (citations

---

[1] But see State v. Howard, 926 S.W.2d 579, 586-587 (Tenn. Crim. App. 1996 ("relatively scant testimony"); State v. Ruane, 912 S.W.2d 766, 782 (Tenn. Crim. App. 1995) ("slight" evidence).

omitted).  Indeed, this is exactly what occurred in the present case.[2]

After review, I am unable to conclude that the evidence, in this case, when viewed in the light most favorable to the appellant, is sufficient for a rational trier of fact to find the elements of voluntary manslaughter.  The proof established that both the victim and the appellant were professionals.  The appellant was employed as an investment banker and the victim was a medical lab technician.  The victim had serious health problems and had been diagnosed with Hepatitis C and mixed connective tissue disease.  The proof also revealed that the appellant and the victim, neighbors in an apartment complex, routinely socialized and it was not unusual for them to visit back and forth, sometimes at unusual hours.  The record is absent any indicia of hostility or ill will between the two neighbors prior to the incidents occurring immediately preceding the shooting.

On the fateful evening of the shooting, the appellant and the victim met on four occasions.  On all four occasions, it was the victim who initiated the encounters.  The testimony established that both had been drinking alcohol.[3]  The first meeting occurred as the appellant was returning to his apartment from work when he met the victim on the steps of their apartment building.  Their exchange was fairly brief and without any notable unpleasantries.  The victim told the appellant that he had been advised by his doctor that his medical condition had worsened and that he only had two and one-half to five years to live.  The appellant, in passing, told the victim that he had seen a mutual friend, a local pharmacist, who said "hello."  The victim, in response to this statement, questioned the appellant as to whether their mutual friend had said anything else about him.  The appellant assured him that their friend had not said anything further and the conversation ended.  The remaining encounters involved an extension of the first conversation.  In sum, during ensuing

---

[2]I acknowledge the trial court's dilemma in resolving this issue.  Indeed, the trial court observed that the proper charge would be "either murder second or nothing."  However, under the dictates of a decision by a previous panel of this court, Summerall v. State, 926 S.W.2d 278, 279 (Tenn. Crim. App. 1995), the court noted that it had no choice but to instruct on voluntary manslaughter.

[3]The autopsy report revealed that the victim's blood alcohol level was .42 per cent with cocaine and meperidine also being present.

meetings between the two, the victim expressed, with growing hostility, that he did not think the appellant had shown appropriate compassion for his worsened medical condition and that he believed the pharmacist had said more than the appellant was relating.

The record reflects that, although the victim's frustration intensified with each meeting, the appellant remained calm and, in fact, attempted to calm the victim. The last encounter occurred when the victim returned to the appellant's apartment at approximately 10:30 p.m. Prior to entering, the victim remarked, "I'd like to come in and apologize for the way I acted earlier." As the appellant opened the door, the victim pushed his way into the apartment and grabbed the appellant. The appellant retreated to the bedroom where the victim continued, in a "hostile and irate state," to make threats against the appellant's life. Shortly, thereafter, the victim "crammed" a pistol into the appellant's ear and exclaimed, "You've got thirty seconds left to live." The appellant was ultimately able to retrieve the pistol and, during a final scuffle, shot the victim.

Before a defendant can be found guilty of voluntary manslaughter, there must be evidence that he acted in a state of passion sufficient to obscure his reasoning and that the passion was produced by reasonable and adequate provocation. State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992); see also Tenn. Code Ann. § 39-13-211. In other words, an instruction on voluntary manslaughter is proper only if the proof establishes both provocation and passion. Although the proof clearly establishes that the victim was "hostile and irate," there is simply no evidence that the appellant acted in sudden passion as to obscure his judgment or that the appellant acted in an irrational manner and without cool purpose. See Sentencing Commission Comments, Tenn. Code Ann. § 39-13-211. Indeed, the proof shows that the appellant shot the victim with "cool purpose," believing that the use of deadly force was necessary under the circumstances to prevent his own death, i.e., self-defense. In the absence of proof of passion, I find the trial court's instruction for voluntary manslaughter improper.

4

Additionally, it could be argued that the instruction on voluntary manslaughter in the present case abridged the appellant's constitutional right to present his defense. The appellant chose to proceed on an "all or nothing" approach, *i.e.*, either he was guilty of second degree murder or the homicide was justified under a theory of self-defense. Voluntary manslaughter does not fall squarely under either category. Rather, it lies someplace between the justifiable killing and the unlawful taking of a human life, in other words, a so-called imperfect self-defense.

> Again, voluntary manslaughter differs from homicide which is excusable because committed in self-defense; in the latter case, there is an apparent necessity to kill the agressor for self-preservation, and in the former, no necessity at all. Usually, voluntary manslaughter is a consequence of quarrels and combats. It is committed suddenly, without reflection, and repels the supposition that it is the result of premediation or a prearranged plan to kill.

40 Am.Jur.2d *Homicide* § 57. Obviously, in a homicide case defended upon a theory of self-defense where there is no proof of either passion or provocation, an instruction on manslaughter effectively compromises the defendant's theory of the case. Cf. People v. Strohl, 456 N.E.2d 276, 280 (Ill. App. 1983).

For the above reasons, I respectfully dissent.


_____
DAVID G. HAYES, Judge

5