# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### AUGUST 1998 SESSION



FILED

October 19, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 03C01-9707-CR-00259 |
| Appellee, | ) | |
| | ) | SULLIVAN COUNTY |
| VS. | ) | |
| | ) | HON. PHYLLIS H. MILLER, |
| HAGAN PAUL ROBERTS, II, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Reckless Aggravated Assault) |


**FOR THE APPELLANT:**

STEPHEN M. WALLACE
District Public Defender

TERRY L. JORDAN
**(at trial)**
Assistant Dist. Public Defender
P.O. Box 839
Blountville, TN 37617-0839

B.C. McINTURFF
**(on appeal)**
132 Broad Street
P.O. Box 583
Kingsport, TN 37662-0583

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY C. PATRICK
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

J. LEWIS COMBS
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617-0526


OPINION FILED: _____


**AFFIRMED**


**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Hagan Paul Roberts, II, appeals as of right his conviction by a Sullivan County jury of reckless aggravated assault by the display and use of a deadly weapon. He was sentenced as a Range II, multiple offender, to seven (7) years imprisonment. On appeal, the defendant presents the following issues for review:

> (1) whether the evidence was sufficient to support the jury's verdict;
>
> (2) whether the trial court properly admitted photographs of the victim into evidence;
>
> (3) whether the trial court erred in allowing the state to question a defense witness about her gender;
>
> (4) whether the trial court erred in allowing the victim to testify regarding prior altercations with the defendant;
>
> (5) whether the cane used in the commission of the offense could be considered a deadly weapon; and
>
> (6) whether the trial court properly sentenced the defendant.

After a careful consideration of the record, the judgment of the trial court is AFFIRMED.

**FACTS**

_____The victim, Teresa Gillenwater, was the defendant's girlfriend. She described their 3 ½ year relationship as stormy and believed it was nearly over when the assault occurred. Although the couple once lived together, they maintained separate residences at the time of the incident.

On the evening of May 1, 1996, the victim called the defendant and asked him to come to her apartment to discuss his courtship of another woman. The victim testified that she had several drinks of vodka waiting for the defendant.

2

The defendant arrived around midnight and entered the victim's bedroom where she was sleeping.  They began arguing about the woman the defendant was supposedly seeing.  The defendant attempted sexual intercourse, but the victim resisted by scratching him.  The defendant then punched the victim, knocking her down.  When she attempted to get up using a cane, the defendant grabbed it and began to strike the victim with the cane.

The victim apparently lost consciousness during the incident.  She testified that the next thing she remembered was waking up the following morning with the defendant still in her apartment.  After having consensual sexual intercourse with the victim that morning, the defendant showered and left.

The victim did not initially intend to seek medical attention for the injuries she received in the incident.  However, the following evening she lost vision in her left eye and it became very painful.  Her daughter took her to the emergency room.  Hospital personnel called the police after seeing the victim's injuries.  Kingsport police officers questioned the victim at length and took photographs of her injuries.  Her face and neck were bruised, and she had multiple linear marks on her back consistent with being struck with a cane.

The jury was charged as to the indicted offense of intentional aggravated assault.  They returned a verdict of guilty for the lesser offense of reckless aggravated assault.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence presented at trial was insufficient to support a verdict of guilt for reckless aggravated assault.  The defendant asserts that he was defending himself from an unprovoked attack by the victim.

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,19 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The victim testified that she resisted the defendant while he attempted to perform sexual intercourse. The defendant became angry and punched the victim. The victim testified that after the defendant knocked her down with punches she attempted to use a cane in order to stand up. The defendant grabbed the cane and began beating her with it. The cane was made an exhibit at trial. Photographs admitted into evidence show linear bruises on the victim's back consistent with multiple blows from a cane. Viewing the facts in a light most favorable to the state, there is sufficient evidence for the jury to have found the defendant guilty of recklessly causing the victim bodily injury by use of a deadly weapon.

This issue is without merit.

4

## PHOTOGRAPHS

The defendant contends the trial court erred in admitting photographs of the victim showing injuries not inflicted by the deadly weapon. The defendant also asserts the photographs depict injuries not inflicted on the night in question.

The defendant failed to object to the admission of the photographs at trial. The trial court, consequently, was not afforded the opportunity to determine their potential for unfair prejudice. Therefore, the issue is waived. Tenn. R. App. P. 36(a). Furthermore, even if the issue were not waived, we would conclude that the trial court did not abuse its discretion in admitting the photographs. *See* State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994).

This issue is without merit.

## SCOPE OF CROSS-EXAMINATION

The defendant alleges as his third issue that the trial court erred in allowing the state to cross-examine a witness as to her gender. The witness testified for the defendant regarding the victim's prior conduct at the defendant's apartment.[1] The defendant claims the questions were an impermissible attempt to impeach the witness' credibility.

On cross examination, the prosecutor asked the witness, "Now, is it, it's Mr. Sierra West, is that correct?" The witness replied, "No, sir, it's Sierra West." The prosecutor replied that he needed to refer to the witness as either "Mister" or "Miss." The witness responded, "Miss." Defense counsel objected,

---

[1] The witness testified that she met the defendant one (1) month prior to the incident. She testified that she had seen the victim at the defendant's apartment "ranting and raving." The witness further testified that the victim acted as if she believed the defendant and the witness were romantically involved.

contending the state was attempting to "slur" the witness.

During a jury-out hearing, the prosecutor stated that the witness was listed as a male on her driver's license, but dressed as a female in court. The witness testified in the jury-out hearing that she was born with the sexual organs of both sexes.[2] The witness preferred to be addressed as a female and was currently "taking care of that problem."

The prosecutor argued "[i]f she's one sex and she's dressed as another, then she's portraying herself as something she's not . . . I think it has to do with her credibility." Defense counsel vociferously argued this line of questioning was irrelevant and demeaning to the witness.

At the conclusion of the jury-out hearing, the trial court, while noting this matter to have "some relevance to this case," stated that the jury would be instructed to disregard the prosecutor's question. Defense counsel, nevertheless, stated that he intended to give the witness an opportunity to explain her condition. The trial court then responded that the prosecutor would be allowed to ask the witness if she was listed as a male on her driver's license, and the witness would be given the opportunity to explain her condition. This procedure was followed when the jury heard her testimony.

This Court concludes that an attempt to utilize hermaphrodism as a ground for general impeachment would be improper.[3] However, defense counsel desired to allow the witness to explain her condition. This was done.

---

[2] This anatomical condition is known as hermaphrodism or hermaphroditism.

[3] As to marking "male" on the drivers license application and subsequently claiming to be female, the probative value of such evidence is clearly outweighed by its prejudicial effect even if it were deemed "relevant" to credibility. Tenn. R. Evid. 403.

We conclude there was no prejudice to the defendant. *See* Tenn. R. App. P. 36(b).[4]

## PRIOR INCIDENTS

The defendant contends the trial court also erred by allowing the victim to testify to prior violent episodes by the defendant on redirect examination. Defense counsel asked the victim on cross-examination about a contempt citation that she received for "filing a false warrant against [the defendant]." Counsel then asked the victim, "You all hadn't had any violent confrontations or anything of that sort?" The victim responded, "There had been other times that he had slapped me."

When the state attempted to rehabilitate the victim's testimony by inquiring into the prior violent episodes, the defendant objected, arguing that the prior incidents were overly prejudicial.

The prosecution replied that the defense had opened the door to the testimony by asking whether there had been prior violent episodes between the defendant and the victim. The trial court agreed with the state that the defendant had opened the door to the testimony on prior violent episodes. The victim was able to testify to three (3) instances of violence by the defendant and the injuries she received on those occasions.

---

[4] Canon 3B(6), Code of Judicial Conduct, Sup. Ct. Rule 10, provides as follows:

> A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel, or others. This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or other similar factors, are issues in the proceeding.

The admissibility of testimony and other evidence, as well as the scope of redirect examination, is within the discretion of the trial court, which will not be reversed absent demonstration of an abuse of that discretion. State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994).

The trial court did not abuse its discretion allowing the victim to testify on redirect to the prior incidents as the defendant "opened the door." The state, attempting to avoid any potential prejudice to the defendant, had avoided reference to the prior incidents on direct examination. The defendant, however, created an impression on cross-examination that no prior violent incidents occurred between them. The victim's testimony on redirect was appropriate in light of the circumstances.

This issue is without merit.

## DEADLY WEAPON

The defendant raises as his fifth issue the characterization of the cane as a deadly weapon. The defendant alleges the state failed to prove the *mens rea* of the crime as it failed to prove his intent to use the cane as a deadly weapon.

According to statute, "'[d]eadly weapon' means: [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury[.]" Tenn. Code Ann. § 39-11-106(5)(B). "Serious bodily injury" results from bodily injury involving "(A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; or (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(34).

8

The trial court correctly instructed the jury as to the elements of the crime charged and applicable definitions. The jury found the defendant guilty of reckless aggravated assault, which necessarily included a finding that the cane was a deadly weapon. It is clear that the jury could have found the manner in which the defendant used the cane made it capable of causing serious bodily injury.

This issue is without merit.

## SENTENCING

In his final issue, the defendant contends trial court erred in denying probation and setting an excessive sentence. The defendant submits that the majority of his past convictions were drug related, and that the victim was the instigator of the subject incident.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

### A. Probation

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

9

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant.  Tenn. Code Ann. § 40-35-103(1); *see also* State v. Ashby, 823 S.W.2d at 169.

The defendant, although convicted of a Class D felony, was sentenced as a Range II, multiple offender because of prior felony convictions.  The presumption of alternative sentencing, therefore, does not apply.  Tenn. Code Ann. § 40-35-102(5), (6).  In determining that incarceration was appropriate, the trial court explicitly found that less restrictive measures had been unsuccessfully applied to the defendant previously, that he had a long history of criminal conduct, and that confinement was necessary to avoid depreciating the seriousness of the offense.

The defendant had over ten (10) prior felony convictions and over ten (10) misdemeanor convictions from 1971 until the present.  On numerous prior occasions, he had received alternative sentencing.  He has continued to violate the law.  The trial court properly considered the relevant criteria for alternative sentencing.  The denial of alternative sentencing is entitled to a presumption of correctness and was proper.

This issue is without merit.

## B. Length of Sentence

The defendant also contends the trial court imposed an excessive

sentence. The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. *See* State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

The range of the defendant's sentence was 4-8 years. Tenn. Code Ann. § 40-35-112(b)(4). In determining the length of sentence, the trial court applied three (3) enhancement factors and one (1) mitigating factor. The trial court found the defendant had an extensive criminal history as evidenced by numerous convictions other than those relied upon to establish the defendant as a Range II, multiple offender. Tenn. Code Ann. § 40-35-114(1). The trial court further found the defendant was on probation at the time of the instant offense.

11

Tenn. Code Ann. § 40-35-114(13)(C). The trial court enhanced the defendant's sentence to eight (8) years.[5] The trial court then found that a sustained intent to violate the law did not motivate the defendant's conduct and mitigated the sentence down to seven (7) years. Tenn. Code Ann. § 40-35-113(11).

Based upon the trial court's findings, the sentence of seven (7) years was appropriate. This issue is without merit.

## CONCLUSION

In summary, there was sufficient evidence for a rational trier of fact to find the defendant guilty of reckless aggravated assault. Further, the trial court correctly denied probation and arrived at an appropriate sentence of incarceration. Accordingly, the judgment of the trial court is AFFIRMED.

---

[5] The trial court also found the defendant had previously shown an unwillingness to comply with conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). The record does not support the application of this enhancement factor. In spite of the multitude of convictions, the record does not reveal that any offense or proven violation was committed while the defendant was on probation or while on any other condition of a sentence involving release into the community. However, the trial court expressly stated at the sentencing hearing that it was giving this factor little weight. Accordingly, we see no need in reducing the defendant's sentence.

                                           _____

                                           **JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOSEPH M. TIPTON, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**

13