## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT KNOXVILLE

### JUNE SESSION, 1999

**FILED**

October 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | |
| | * | **No. 03C01-9805-CR-00174** |
| **Appellee,** | * | |
| | * | **KNOX COUNTY** |
| **vs.** | * | |
| | * | **Hon. Richard Baumgartner, Judge** |
| **STEVEN OTIS NICELY,** | * | |
| | * | **(Rape of a Child; Agg. Sexual Battery)** |
| **Appellant.** | * | |


For the Appellant:

**Tommy K. Hindman**
and
**Laura E. Metcalf**
Attorneys
NationsBank Bldg., Suite 700
550 Main Avenue
Knoxville, TN  37901

(ON APPEAL)

**Mark Stephens**
Knox County Public Defender

**John Halstead**
Asst. Public Defender
1209 Euclid Avenue
Knoxville, TN  37921

(AT TRIAL)


For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Todd R. Kelley**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Charm Knight**
Asst. District Attorney General
City-County Building
Knoxville, TN  37902


OPINION FILED: _____

AFFIRMED


**David G. Hayes**, Judge

**OPINION**

The appellant, Steven Otis Nicely, was convicted by a jury in the Knox County Criminal Court of one count rape of a child and one count aggravated sexual battery.

The trial court imposed a twenty-two year sentence for rape of a child and an eleven year sentence for aggravated sexual battery. The sentences were ordered to run concurrently. On appeal, the appellant raises four issues for our review: (1) the sufficiency of the evidence; (2) whether the jury verdict of rape of a child and aggravated sexual battery violate the protections of double jeopardy; (3) whether the trial court improperly limited the cross-examination of specific prior instances of the victim's sexual conduct under Tenn. R. Evid. 412(c)(4)(ii); and (4) whether the trial court erred by refusing to charge the jury with range of punishment.

After review, we affirm the judgment of the trial court.

BACKGROUND

In the summer of 1994, N.B.,[1] the victim, the victim's mother, Wilma Faye Wynn, and the appellant lived in the Karns community of Knox County. Ms. Wynn and the appellant began their relationship around 1992. In 1994, they began living together. N.B. was eleven years old and entering the sixth grade at that time. Although the thirty-seven year old appellant and the victim's mother were unmarried, N.B. viewed the appellant as a "father figure." In September of 1995, the victim confided in a friend that she and the appellant had been involved in sexual activity. In January of 1996, the appellant was charged in a two count indictment with rape of a child and aggravated sexual battery.[2]

---

[1]It is the policy of this court to refer to child victims of sexual abuse by their initials. State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

[2]The "open dated" indictment charged both offenses occurred between "__ day of June, 1994, and on divers and diverse dates between that date and the __ day of September, 1995."

At trial, she testified, providing no specific dates, that the "touchin' happened all the time" in his room, the living room, and the kitchen. She testified that the appellant had touched her vagina with his penis and his mouth. The victim admitted that she would go into the appellant's room because she liked the attention. She stated that during the incidents of abuse, she remained clothed but the appellant was unclothed.

The victim recounted that the first sexual encounter occurred when she and the appellant were watching television in his bedroom. The appellant began rubbing her back and eventually removed her bra and began rubbing her stomach and chest. Frightened, the victim left the room. The appellant followed her outside and told her that if she told they would both be "in trouble."

Another incident occurred in the living room, when the appellant digitally penetrated her vagina. She testified that on another occasion he put her hand on his penis and she masturbated him until he ejaculated. Yet, another offense occurred in the victim's brother's room. The appellant put his hands on her and asked if she had had sex standing up before. This offense ceased when the victim's mother returned home from work.

The victim testified that on or about September 3, 1995, the appellant got out of the shower and had a towel wrapped around him. The victim had entered his room to retrieve a towel for herself. The appellant pulled her onto the bed where they both began touching each other. The appellant then penetrated the victim's vagina with his penis. When she complained that it hurt, he stopped. She stated that she liked the appellant to fondle her; however, the penetration scared and hurt her.

Later that same day, the appellant took the victim and her brother to the lake.

The appellant dropped her brother off at the bank with other children while he and the victim went riding in the boat. The appellant gave the victim a Valium for a headache. After entering a cove on the lake, the appellant gave the victim a beer. That evening, when the appellant and her mother were away at a concert, the victim drank some liquor, locked herself in the bathroom, and passed out. Her brother called Debbie, their father's girlfriend, who took the victim to her trailer in Powell. It was on this occasion that the victim related to Debbie her sexual encounters with the appellant. Debbie called the victim's mother and advised what the victim had told her.

A few days later, the victim spoke with the Department of Human Services (DHS). She told the DHS case worker that the appellant had only penetrated her once. However, she did tell DHS that he had touched her before. DHS referred the victim to a psychologist at St. Mary's Hospital. The victim stated that she was very unhappy at the time because "[e]verything came out." The victim remained at the hospital for nine days. After leaving the hospital, the victim was placed in Peninsula Lighthouse for further treatment for two months. Next, the victim was placed in PAASAC where she received continued counseling.

The victim stated that she had never been penetrated before the actions by the appellant. However, during the time that the appellant was abusing her, she was digitally penetrated by another boy while they were kissing.

On cross-examination, the victim stated that her mother drank heavily during the times of these offenses and they were experiencing various conflicts in their relationship. The victim's domicile fluctuated back and forth between living with her father and mother. She admitted telling the psychologist that she had provoked the appellant by grabbing his genitals and removing the covers from the bed in which he was lying. She admitted that her story had changed from the time she talked to

4

DHS and her testimony in court.

The victim also told the psychologist that she smoked marijuana and that she heard voices. However, she denied telling the psychologist of any specific instances of alcohol or marijuana abuse. She stated that the entire time was very confusing for her, however, she "did not hallucinate and [was] not mental."

James Nicely, the appellant's brother, testified that he talked to the appellant on two occasions about his sexual involvement with the victim. The appellant told him that the victim was "comin' on to him." On the second occasion, the appellant asked for his help. The appellant related that the victim had pulled the towel off of him and climbed on top of him while he was asleep. When he awakened, there was a wet spot on the sheets. Further, the appellant related that he had performed oral sex on the victim at the lake.

Also, testifying for the State was Nancy Jackson, an employee of the Blount Memorial Emotional Health and Recovery Center, where the appellant had apparently submitted himself for evaluation and/or counseling. Unfortunately, the testimony of Ms. Jackson is not included in the record.[3] An exhibit to her testimony includes the following interview notations: "she touches/grabs him in an inappropriate way for [sic] past year. . . states he allowed her to masturbate him. . . I am really worried that I might be a child molester."

After resting its case-in-chief, the State elected two offenses pursuant to the requirements of State v. Shelton, 851 S.W.2d 134, 136 (Tenn. 1993). For the rape of N.B., the State elected the offense on or about September 3 which occurred in

---

[3]Volume II of the trial transcript ends with page 172 while volume III begins with page 202, omitting nearly thirty pages of transcript from the record. From the table of contents, we note that this contains a large portion of the State's proof, i.e., the remainder of the cross examination of James Nicely and the testimony of Nancy Jackson. The obligation of preparing a complete and adequate record for the issues presented on appeal rests upon the appealing party. See Tenn. R. App. P. 24(b).

the appellant's bedroom the same day that the appellant, the victim, and her brother went to the lake. With regard to the aggravated sexual battery, the State elected the offense which involved masturbation of the appellant; this type of sexual contact occurring only on the one occasion.

The defense presented the testimony of Dr. Jeffrey Davis, a clinical psychologist employed at St. Mary's Health System, who treated the victim. From his report, he testified that the victim and her mother had a "tumultuous" relationship and she felt abandoned by her father. The victim had reported using Valium, alcohol, and marijuana and attempts to overdose on drugs. She told the psychologist that she was experiencing auditory hallucinations in which she heard people swimming and laughing when she stared outside her window. At one point, she said that she saw a giant eraser chasing her around her school classroom. Moreover, she reported seeing "mannequin-like Indians" staring at her.

The victim told the psychologist that she felt close to the appellant because he took care of her mother. She acknowledged that she had been provocative toward the appellant and that she enjoyed the attention she received from him. The psychologist opined that possibly the victim had perceived the relationship as a means to strain the relationship between the appellant and her mother. Davis diagnosed the victim with major depression, "severe without psychotic features," alcohol and cannabis abuse, and post-traumatic stress disorder. The psychologist recommended that the victim be placed on medication, in-patient treatment, family intervention, and chemical dependency treatment. Although the psychologist did not feel that her hallucinations were valid in the "true psychotic sense," he felt they were a product of her imagination and fantasy.

Wilma Wynn, the victim's mother, testified that her daughter has a history of lying. Ms. Wynn stated that her daughter expressed much distaste for her new

environment in Karns and blamed her mother for her father not being around. She related that she and the victim's father were not on good terms because he did not provide any support for his children. Ms. Wynn testified that her daughter had a habit of opening the shower door on people, removing covers from the bed while people were under them, and entering her bedroom. She stated that the appellant had asked her to lock the bedroom door when she left for work in the mornings. The appellant also began sleeping in blue jean shorts as opposed to the nude. She recounted an incident on Valentine's Day when the appellant had bought her a ruby ring. The victim became extremely jealous and angry until the appellant also bought her a ring.

Ms. Wynn stated that the victim has told her on different occasions that the appellant sexually abused her. Then, on other occasions, the victim denied that the appellant abused her. Although her daughter was given a pregnancy test upon admission to the hospital, no test was performed to determine whether the victim was sexually active.

Tiffany Wallace, a friend of the victim, presently incarcerated at the juvenile detention center, testified that the victim was a chronic liar. She stated that, prior to the victim's admission to Lighthouse, she and the victim were taking Valium, smoking marijuana, and drinking alcohol on a regular basis.

I. SUFFICIENCY OF THE EVIDENCE

First, the appellant challenges the sufficiency of the convicting evidence to sustain a verdict of guilt for rape of a child and aggravated sexual battery. A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this

7

court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). Viewing the evidence under these criteria, it is this court's responsibility to affirm the conviction if the proof was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e).

First, within his sufficiency arguments, the appellant contends that the victim is unbelievable because she changed her testimony concerning (1) the number of times and the places where the abuse occurred; (2) her alcohol and drug use; and (3) her previous sexual experiences. Thus, the appellant's challenge is one of witness credibility. In essence, the appellant requests that this court trespass upon the jury's responsibility to evaluate the credibility of the victim, N.B. It is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. See generally State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-719 (Tenn. Crim. App. 1993). Although inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt. We decline the appellant's invitation to overturn his convictions by making a choice different from that of the jury.

Next, the appellant challenges his conviction for rape of a child. Specifically, he contends that "the evidence was inconclusive as to whether sexual penetration even occurred." He argues that the appellant never mentioned sexual penetration at

the hospital, to his father, or to his brother.  Moreover, he asserts that penetration was never proven because no physical examination was performed on the victim.  The State contends that physical evidence is not required for a conviction and the victim's testimony of penetration alone was sufficient to support the verdict.

To support a conviction for rape of a child, the State is required to prove an "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age."  Tenn. Code Ann. § 39-13-522(a) (Supp. 1994).   In the instant case, the trial court defined sexual penetration to the jury as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required."  See Tenn. Code Ann. § 39-13-501(7) (1991).

This testimony at trial showed the victim, N.B., was twelve years old at the time of the offense.  She testified that the appellant penetrated her vagina with his penis.[4] Therefore, a rational juror could have found that the appellant penetrated N.B., supporting his conviction for rape of a child.  This issue is without merit.

Moreover, we conclude that the evidence was more than sufficient to find the

---

[4]An examination of the record reveals the following testimony during the direct examination of N.B.:
> Q: (Prosecutor) Okay.  Tell me how that day started.  What do you remember about that morning?
> A: (Victim) Goin' up--or gettin' up and I think Steve got out of the shower and had a towel on and was in his room.  I went in his room to get a towel.  And he pulled me on the bed and started touching me, and I was touching him too.  But somehow he pulled me on top of him and my clothes [sic] was off and he put it in.
> Q: He put what in where?
> A: He put his penis in my vagina.
> . . .
> Q: Okay.  And how did you feel about him putting his penis inside you?
> A: It hurt.  I--I--it scared me.
> Q: Okay.  This particular day--let's go back to that particular day--he put his penis inside you that morning?
> A: Yeah.

appellant guilty beyond a reasonable doubt of aggravated sexual battery.[5] The victim testified that the appellant placed her hand on his penis and moved it until he ejaculated.[6]  Furthermore, the appellant's admission at Blount Hospital corroborated this testimony in that, "he allowed her to masturbate him."  Accordingly, we find the evidence presented sufficient proof from which a rational juror could reasonably infer the appellant's guilt beyond a reasonable doubt.  This issue is without merit.

## II.  DOUBLE JEOPARDY

Second, the appellant asserts that the jury's verdicts of guilty of rape of a child and aggravated sexual battery violate the principles of double jeopardy because both charges arose from a single incident, i.e., "the vaginal penetration and masturbation occurred at the same time and involved the same victim."  He argues that his convictions stem from "the continuation of one sexual act from penetration to ejaculation" and as such violate double jeopardy protections against multiple punishment for the same offense.  See State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996).  The appellant's recitation of the facts claims, "[o]n the morning in early September, the vaginal penetration occurred first, the defendant stopped when

_____

[5]In order to support a conviction for aggravated sexual battery, the State is required to prove "unlawful sexual contact with a victim by the defendant or the defendant by a victim" and that "[t]he victim is less than thirteen (13) years of age."  Tenn. Code Ann. § 39-13-504(a)(4) (Supp. 1994).

[6]Q: (Prosecutor) Okay.  Were there ever times when he would get you to touch him?
A: (Victim) Hum, once, and I put my hand on his penis.
Q: Okay.  And when you put your hand on his penis, how did that happen?  Did he ask you to?  Did he tell you to?  How did that happen?
A: Just kind of put my hand on it and started moving it.
Q: Who did that?  Did he--
A: Yeah.
Q: He or you--I'm sorry.
A: He did.
Q: Him or you?
A: He did.
Q: Okay.  He put his hand where?
A: No.  I put my hand on him--he put my hand on him.
Q: He put your hand on him?
A: Yeah.
Q: Okay.  And by on him do you mean his penis?
A: Yeah.
Q: Okay.  And once he got you to put your hand on his penis, what did he make you do with your hand?
A: Masturbate--

10

the victim said it hurt, and she completed the sexual act by masturbating the defendant. We find no proof in the record to support this factual contention. Indeed, the record reflects that the battery conviction (masturbation) and the rape conviction were unrelated and occurred on different dates thus constituting two separate and distinct crimes.[7] For this reason, we find no further analysis of the double jeopardy issue necessary. This issue is wholly without merit.

### III. RAPE SHIELD LAW

Next, the appellant asserts that he was denied his right to a fair trial because the trial court erred by limiting the cross-examination of the victim regarding specific instances of her prior sexual conduct under Tenn. R. Evid. 412. The appellant argues that the victim's sexual experiences from persons other than the appellant "included heavy petting, masturbation, and digital penetration." Thus, he contends it was imperative that he be permitted to show that the victim's "knowledge of sexual matters" was obtained from persons other than the accused. See Tenn. R. Evid.

---

[7]The record contains no evidence as to the date the sexual contact by masturbation occurred. The testimony of the sexual battery involving masturbation was wholly unrelated in time to the rape which occurred "on the morning of the day in early September, 1995" that the three went to the lake. As previously noted, the State elected offenses and the trial court charged the jury (1) as to the rape charge,

> For you to find the defendant guilty of this offense, . . ., the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
>> (1) That the defendant had unlawful, sexual penetration of the alleged victim, or the alleged victim had unlawful sexual penetration of the defendant in the bedroom of the residence in Knox County, Tennessee, occupied by the Defendant . . . and [the victim] on the morning of the day in early September, 1995, that the Defendant . . ., [the victim], and her younger brother went to the lake.
>> . . .

and (2) as to the aggravated sexual battery,

> For you to find the defendant guilty of this offense, . . ., the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
>> (1) That the defendant had unlawful sexual contact with the alleged victim, . . ., specifically being the day the alleged victim, . . ., masturbated the Defendant . . . until he ejaculated in the bedroom of the residence in Knox County, Tennessee, occupied by the Defendant . . . and [the victim].
>> . . .

412(c)(4)(ii). In sum, he contends that the victim's sexual experiences with persons other than himself would have established that (1) the victim was not sexually naive; (2) she was sexually curious and aggressive toward the appellant; and (3) she obtained knowledge independently from the appellant to falsify the allegations against him.

Before evidence of specific instances of a victim's sexual behavior may be admitted at trial, the accused must file a written motion ten days prior to trial, accompanied by an offer of proof describing the specific evidence and the purpose for introducing it. Tenn. R. Evid. 412(d)(1). After notice has been given, the trial court must conduct a hearing outside the presence of the jury and the public to determine whether the evidence is admissible. Tenn. R. Evid. 412(d)(2). The trial court must decide (1) whether the evidence is relevant to the issue of knowledge of sexual matters and (2) the probative value must outweigh the unfair prejudice to the victim. Tenn. R. Evid. 412(d)(4). "[T]he evidence shall be admissible in the proceeding to the extent an order made by the court specifies the evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined." Tenn. R. Evid. 412(d)(4).

In a pre-trial motion hearing, the appellant requested that he be permitted to cross-examine the victim at trial concerning specific statements she made to case workers in a Department of Human Services report. The DHS report attributed statements to the minor victim which she allegedly made during their investigation of sexual abuse. The report indicated the following statements: (1) the victim related, "[w]hen asked for specifics of this incident . . . [victim] said that *he [appellant] looked like everyone else*, referring to his privates," and (2) when asked if she had been sexually active with a boyfriend, "[s]he stated that she had not had sex but admitted that there had been *heavy petting involving digital penetration with boys fourteen years old*." (Emphasis added).

12

At the hearing, the minor victim denied making the statement to DHS that she had been involved in digital penetration with <u>boys</u>. She admitted that on one occasion she had been digitally penetrated by <u>a</u> friend after they had kissed. Other than the DHS report, the appellant offered no other direct proof pertaining to the victim's alleged prior sexual experiences.

On cross-examination at the hearing, N.B. related that she knew about sex "through school and her friends." She testified that she had a sex education class in the fifth grade which occurred prior to any of the offenses involving the appellant. She stated that the appellant began molesting her prior to the one incident with her fourteen year old friend. Moreover, the appellant's digital penetration occurred before the occurrence with the friend. She further stated that she had never seen another man's genitalia before she saw the appellant's.

In ruling on the motion, the trial court observed:

> The issue in this case is, you know, whether or not there was-- there was sexual penetration of this twelve year old child by Mr. Nicely. The basis of that testimony or the basis of that charge is the testimony of [victim].
> Their only way to rebut that is to claim that she for whatever reason is either lying or mistaken or is dreaming this up. Of course, I think--well--and the only way that they can do that is to attack the credibility.
> What I've tried to do is fashion the purpose of the rule, and that is not to drag out somebody's sexual history. In my judgment this young girl doesn't have a sexual history other than that she's engaged, . . ., in some petting with a teenage boy that involved . . .digital penetration. . . .
> But the only opportunity they have to question her credibility is to show that this is not the exclusive sexual contact that this girl has, that she would have another basis of knowledge of what sexual contact is. . . .
> I'm going to allow Mr. Hindman [appellant's trial counsel] to ask this question--write it down-- "Have you"--referring to [victim]-- "Have you engaged in"--or "Have other individuals, other men, engaged in digital penetration with you?" And establish whether it's prior to or after [appellant] had done that and on how many occasions. That will be the entire scope of the examination with regard to that.

The Confrontation Clause of the Sixth Amendment guarantees the right of the accused in a criminal prosecution to "be confronted with the witnesses against him." Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435 (1986). "[T]he main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*." Id. (citations omitted) (internal quotations omitted) (emphasis in the original). See also State v. Melvin Edward Henning, No. 02C01-9703-CC-00126 (Tenn. Crim. App. at Jackson, Oct. 24, 1997). "[T]he Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense counsel might wish.'" Pennsylvania v. Ritchie, 480 U.S. 39, 53, 107 S.Ct. 989, 999 (1987) (citation omitted). The propriety, scope, manner and control of testimony and other evidence, including the scope of cross-examination, remains within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion. See State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994) (citations omitted); Tenn. R. Evid. 611(a). We conclude that the trial court achieved the purpose of the rape shield rule in maintaining "a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy." Advisory Commission Comments, Tenn. R. Evid. 412. Finding no abuse of discretion, this issue is without merit.

## IV. RANGE OF PUNISHMENT INSTRUCTION

Finally, the appellant argues that the trial court erred by refusing to instruct the jury with the range of punishment pursuant to Tenn. Code Ann. § 40-35-201(b)(1) (1997) (repealed 1998) for the charged offenses. Although in State v. Cook, 816 S.W.2d 322, 326 (Tenn. 1991), our supreme court held that this provision granted the defendant a statutory right to have the jury informed of the applicable punishment for the pertinent charges prior to determining guilt or innocence, this

14

statutory right is not absolute. Tenn. Code Ann. § 40-35-201(b)(1) (1997)(repealed 1998) provides in pertinent part:

> In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, upon the motion of either party, *filed with the court prior to the selection of the jury*, the court shall charge the possible penalties for the offense charged and all lesser included offenses. (Emphasis added).

In the case *sub judice*, the appellant concedes that he only requested the "Truth in Sentencing" instruction following his *closing argument.* As argued by the State, the appellant never filed a motion requesting the court to instruct the jury on the range of punishment for the offenses of rape of a child and aggravated sexual battery. Therefore, the trial court was not obligated to instruct the jury regarding range of punishment. See State v. Joanna Gail Rosa, No. 03C01-9707-CR-00261 (Tenn. Crim. App. at Knoxville, Jan. 6, 1999); State v. Marcus A. Velez, No. 01C01-9611-CC-00488 (Tenn. Crim. App. at Nashville, Jan. 30, 1998), perm. to appeal denied, (Tenn. Jan. 4, 1999). Accordingly, this issue is without merit.

For the foregoing reasons, the judgments of conviction for rape of a child and aggravated sexual battery are affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOHN H. PEAY, Judge

_____
JOHN EVERETT WILLIAMS, Judge