IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 24, 2004

## LARRY D. UPSHAW v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 74710     Ray L. Jenkins, Judge**

---

**No. E2003-02071-CCA-R3-PC**
**March 26, 2004**

---

The petitioner appeals the denial of his petition for post-conviction relief from his second degree murder conviction, arguing that the post-conviction court erred in finding that his trial counsel provided effective assistance at trial and on appeal. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA McGEE OGLE, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Larry D. Upshaw.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Zane M. Scarlett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner, Larry D. Upshaw, was convicted of second degree murder for the stabbing death of an acquaintance and was sentenced to thirty-eight years in the Department of Correction. His conviction was affirmed by this court on direct appeal, and the supreme court denied his application for permission to appeal. See State v. Larry D. Upshaw, No. E2000-02262-CCA-R3-CD, 2001 WL 823400, at *1 (Tenn. Crim. App. July 23, 2001), perm. to appeal denied (Tenn. Dec. 17, 2001). The evidence presented against the petitioner, as set forth in the direct appeal opinion, included the following:

On the night of September 24, 1998, Officer Chris Bell of the
Knoxville Police Department was patrolling the Western Heights

Housing Development when he received a call that a stabbing had just occurred in the area. Upon his arrival at the scene, he found that the victim, Leroy Page, had suffered a stab wound to the chest. A neighbor, Billie Asher, held a towel to the victim's stomach area. Officer Bell determined that the victim was alive but unresponsive to questions.

. . . .

Ava Cospy testified that she lived with the victim and that their relationship had extended over a period of five years. She recalled that when she arrived home from work at around 5:00 p.m. on the evening of the murder, the [petitioner] and the victim were in her kitchen. No one else was in the residence. She left for the grocery store and, upon her return, the two men were still in the kitchen. Ms. Cospy took a nap and when she awoke, the [petitioner] was the only other person in her house. The victim returned and Ms. Cospy left to purchase beer. Upon her return, the [petitioner] and victim were on the front porch. No others were present. About 10 minutes later, Ms. Cospy heard the victim call to her from the porch, saying that he had been stabbed. No one else was on the porch. She then rushed across the street to call for an ambulance.

Billie Asher testified that the victim had introduced her to the [petitioner] earlier in the day. She recalled that after 5:00 p.m. on the night of the murder, she saw no one on the porch with the victim other than the [petitioner]. At one point during the evening, Ms. Asher went to the victim's apartment in order to get a cigarette from Ms. Cospy. Some 15 to 20 minutes later, Ms. Cospy arrived at her door saying that the victim had been stabbed. As Ms. Asher attended to the victim, she asked, "Was the M.F. [that] did this to you sitting on the porch?" The victim responded, "[Y]eah." When she asked whether "the man on the porch [did] this to [him]," the victim "shook his head" affirmatively and soon lost consciousness. Ms. Asher acknowledged that she did not use the [petitioner's] name when she asked the question, explaining that she could not remember it.

Id. (footnote omitted).

The petitioner filed a *pro se* petition for post-conviction relief on April 22, 2002, in which he alleged ineffective assistance of trial counsel. Post-conviction counsel was appointed, and on March 28, 2003, the petitioner filed an amended petition for post-conviction relief alleging that trial counsel was ineffective, *inter alia*, for failing to adequately confer with him about the case, failing

to locate or interview witnesses, and failing to object to the admission of the victim's dying declaration, which was introduced through the testimony of Billie Asher. Although the petitioner alleged several instances of ineffective assistance in his petition, his sole argument before this court is that trial counsel was ineffective for failing to object to the victim's dying declaration at trial and for failing to raise the issue on direct appeal.

The petitioner testified at the August 14, 2003, evidentiary hearing that trial counsel, who represented him at trial and on appeal, discussed his case with him "[j]ust barely a little bit" prior to trial. He complained in general about trial counsel's failure to raise sufficient objections at trial and, in particular, about his failure to object to the victim's dying declaration. The petitioner testified there were no eyewitnesses to the murder, and he believed he was convicted solely on the basis of the victim's communication with Asher. He said that, in addition to failing to object at trial, trial counsel failed to raise the victim's dying declaration as an issue on appeal. The petitioner also complained that trial counsel failed to interview a man who jogged by the murder scene immediately after the killing.

On cross-examination, the petitioner acknowledged trial counsel came to see him in jail "three or four times," and talked with him about possible witnesses for his defense. According to the petitioner, the "street people" who might have had useful information had relocated since the time of the murder, and he was unable to provide counsel with any information to help his case.

Trial counsel testified he had been practicing criminal law since 1986. He said he was appointed to represent the petitioner in general sessions court and later in criminal court, and his records reflected 34.8 hours he and his private investigator spent in consultation with the petitioner or his sister, and fourteen visits with the petitioner in jail. Trial counsel said the petitioner provided "[v]ery, very little" information to assist in his defense. The petitioner mentioned a potential witness named Robinson who he claimed had been on the porch with him and the victim, but trial counsel's investigator was unable to locate that individual. Despite searching "every Kirkendol in . . . Knox County," his investigator was also unable to locate Robert Kirkendol, the jogger who told a police investigator he had seen "some people running away getting into a car." Trial counsel explained that the police failed to get Kirkendol's address or phone number when they interviewed him at the scene. He said he cross-examined the police investigator about the information Kirkendol had provided, but was unable to do anything more with the information because of their inability to find Kirkendol.

Trial counsel testified he did not object to the victim's statement to Asher, which, he said, was an excited utterance rather than a dying declaration, because he saw no basis for an objection. He said he called as an alibi witness the petitioner's sister, who testified that the petitioner came home shortly after 9:00 p.m. on the day of the murder. However, her credibility was called into question by a statement she had given police in which she said the petitioner had arrived around 11:00 p.m. Trial counsel testified he did not believe there was anything else he could have done in his investigation and preparation of the case. On cross-examination, he acknowledged there were no eyewitnesses to the killing, and that it was established through police testimony that the house where the murder occurred was a "crack cocaine house," frequented by a number of different people.

At the conclusion of the hearing, the post-conviction court issued oral findings of fact and conclusions of law in which it, *inter alia*, accredited trial counsel's testimony regarding the amount of time he had spent in preparation for the case and found that he had done an "excellent job" of representing the petitioner. Accordingly, the court concluded the petitioner had failed to show by clear and convincing evidence that he was denied the effective assistance of counsel and denied the petition for post-conviction relief. Thereafter, the petitioner filed a timely appeal to this court, arguing the post-conviction court erred in finding he received the effective assistance of trial counsel.

## ANALYSIS

### Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). However, review of the post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Initially, we note that, although the post-conviction court issued fairly extensive and detailed oral findings at the conclusion of the evidentiary hearing, there are no written findings of fact or conclusions of law in the technical record. Following a post-conviction hearing, the post-conviction court is required to enter written findings of fact and conclusions of law addressing all grounds for relief. See Tenn. Code Ann. § 40-30-211(b); Tenn. Sup. Ct. R. 28, § 9(A). Nevertheless, the post-conviction court's oral pronouncement of its findings from the bench does not necessarily require reversal and can be harmless error. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987). Here, the post-conviction court's oral findings and conclusions are sufficiently comprehensive to allow for proper appellate review, and hence, we conclude that its failure to enter written findings of fact and conclusions of law constitutes harmless error. See Tenn. R. App. P. 36(b).

The petitioner concedes on appeal that trial counsel was "well prepared." Nonetheless, he argues trial counsel provided ineffective assistance for failing to object to the introduction of the victim's statement at trial or to raise the admission of the hearsay statement as an issue on appeal. The petitioner asserts that, regardless of trial counsel's belief with respect to the admissibility of the statement, he "should have objected and argued the issue at trial and on appeal, based [on] the fact that this area of what is or is not admissible hearsay exception is the subject of to [sic] many legal books and law review articles to count." The petitioner further asserts that by failing to object to the victim's statement, "trial counsel allowed the State to introduce very damaging and prejudicial evidence unchallenged; which evidence if ruled inadmissible by the trial court would have changed the outcome of the trial."

With respect to this issue, the post-conviction court found as follows:

> The [petitioner] stated one objection, or one – one instance of ineffective assistance in that the – his trial attorney failed to object to what he . . . styled as a dying declaration. [Trial counsel] testified that it was actually an excited utterance. Well, it would have had to have been an excited motion since no words were spoken by the deceased. That he made no objection because in his opinion there was no basis for an objection, or any other objections were not made since he felt that . . . there was no basis.
>
> . . . .

The Court fails to see any action or inaction taken by [trial counsel] to rise to the level of <u>Baxter v. Rose</u>, 523 S.W.2d 930, or that the standards of <u>Strickland v. Washington</u>, 466 U.S. 668 have been violated. The Court is of the opinion that under the circumstances that faced [trial counsel] his representation far exceeded the standards of those two cases. And that with the raw material he was presented with he did an excellent job in representing the petitioner/defendant. For the above reasons, the Petition for Post Conviction Relief will be denied.

The record supports the findings and conclusions of the post-conviction court. Trial counsel testified he thought the victim's communication with Asher was legally admissible under the excited utterance exception to the rule against hearsay, and he did not object because he saw no legitimate basis for doing so. By trial counsel's view, the victim's exchange with Ms. Asher, identifying the petitioner as his assailant, was admissible as an excited utterance. The petitioner offered no evidence to the contrary, other than his opinion that trial counsel should have objected to the statement because he was not the perpetrator. We note that this statement occurred, just after the stabbing had occurred, as the victim lay mortally wounded and quickly lost consciousness, apparently dying soon thereafter without regaining consciousness. Thus, this exchange was arguably admissible as an excited utterance, as trial counsel believed. <u>See</u> <u>State v. Summerall</u>, 926 S.W.2d 272, 277-78 (Tenn. Crim. App. 1995) (victim's statement that "Cocaine did it" was admissible as an excited utterance, when victim had just been shot and his speech was "rapid" and "excited"); <u>see generally</u> Neil P. Cohen et al., <u>Tennessee Law of Evidence</u>, § 8.07 (4th ed. 2000). Furthermore, even if trial counsel were deficient for failing to object to the evidence, the petitioner still has not shown by clear and convincing evidence how counsel's alleged deficiency prejudiced the outcome of his trial, as he has not shown a reasonable probability exists that the trial court would have sustained the objection.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to meet his burden of showing he was denied the effective assistance of counsel at trial or on appeal. Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

ALAN E. GLENN, JUDGE