IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 26, 2005 Session

## STATE OF TENNESSEE v. THOMAS ALLEN FRANKS, II

**Appeal from the Criminal Court for Knox County**
**No. 76815     Mary Beth Leibowitz, Judge**

_____

**No. E2005-00292-CCA-R3-CD - Filed August 26, 2005**

_____

The defendant, Thomas Allen Franks, II, was convicted of aggravated burglary, aggravated assault, evading arrest, and resisting arrest. The trial court imposed consecutive sentences of ten years for aggravated burglary and six years for aggravated assault. There were concurrent sentences of eleven months and twenty-nine days each for misdemeanor evading arrest and resisting arrest. The effective sentence is, therefore, sixteen years. In this appeal as of right, the single issue presented for review is whether the trial court erred by declining to grant a continuance or other relief when the state filed notice of its intent to use impeaching convictions just before the beginning of the trial. The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Kelly S. Johnson, Knoxville, Tennessee, for the appellant, Thomas Allen Franks, II.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 23, 2002, the victim, Phillip David Comer, was driven by a friend, David Maples, to the victim's residence in Knoxville, accompanied by the defendant, and the defendant's girlfriend, Annette McMurray. According to the victim, the defendant, who had been drinking, and his girlfriend had entered his car uninvited and were "fighting like cats and dogs" at the time.

At trial, the victim testified that when he arrived at his residence, the defendant initially stayed outside. Maples and Ms. McMurray were sitting on a couch when the defendant entered the front door and began to argue with Ms. McMurray. The victim testified that the defendant and Ms. McMurray went outside, at which point the victim then locked and chained the door in an attempt

to keep them out of his house. He testified that he was afraid of them because "[t]hey were pretty wild." The victim recalled that shortly thereafter, the defendant returned and kicked in the door, knocking it off its hinges and off the bolt lock, while looking for Ms. McMurray. When the defendant threatened the victim, the altercation escalated. The victim testified as follows:

> I was pretty mad and scared, and I hollered at him. I said, "[A]re you goin[g] to come back up here and fix this door?" And he stopped right in his tracks. And . . . I shouldn't have said that because I provoked him, I guess. And he turned around . . . [and] says, "Yeah, I'm gonna fix it; I'm gonna fix it alright." And he starts walkin' back up to the house. I had no door then. So it was 911 . . . because I knew somethin' was goin' to happen . . . . He was going to fix me so . . . I was afraid.

The victim explained that he grabbed an aluminum baseball bat as the defendant threateningly approached him inside the house and "hit him with everything [he] had" but "it didn't phase him." In response, the defendant dragged the victim into the yard, striking him over and over with his fists and the bat for as long as ten minutes until he was finally stopped by the arrival of the police.

A neighbor, Ronald Eugene Scates, testified that he saw the defendant strike the victim with the bat. He stated that after the police arrived, he placed a pillow under the victim's head "because he was bleeding profusely out of the side of his head." Scates described the victim's head as "full of blood." He recalled that one of his eyes was "popped out" and that he had a "big knot."

Officer Donnie Huskey of the Knoxville Police Department testified that he saw the defendant standing over the victim with a baseball bat when he arrived at the residence. He recalled that the defendant tossed the bat away and then fled on foot. The defendant ran through several yards before hiding in a storage shed, where an officer found him. After refusing to comply with the officer's demands, the defendant lunged toward Officer Huskey. Officer Huskey and the other officer "took him to the ground," but the defendant continued to jerk, pull, and kick in an attempt to avoid the arrest. The defendant was subdued and taken into custody.

Six months prior to trial, counsel for the defense filed a motion seeking notice of any impeaching evidence pursuant to Tennessee Rule of Evidence 609(a)(3). The state did not file a response to the motion prior to the date of the trial. On November 9, 2004, the date of the trial, defense counsel asked the trial court to prohibit the state from questioning the defendant about any prior convictions should he choose to exercise his right to testify. At that point, the state asked permission to file notice of the defendant's criminal record, which included nineteen prior convictions, so as to be able to utilize at least some of the convictions in any cross-examination of the defendant. The assistant district attorney, who claimed that the failure to provide notice of impeachment was an oversight, explained that the state had filed such a notice in a separate pending criminal charge against the defendant, case number 76225 in the Knox County Criminal Court, wherein the defendant and his same counsel had received the identical information about the prior record.

While contending that knowing what the state intended to use as evidence was essential to his preparations in this particular case, defense counsel asked the trial court for alternative sanctions: (1) either grant a continuance or (2) exclude the impeaching evidence if the defendant chose to testify in his own defense. After considerable argument and some legal research, the trial court denied the defense motion for relief but permitted the state to impeach on only four of the nineteen convictions: three felonies and a misdemeanor theft.

In this appeal, the defendant argues that the notice by the state was unreasonably late and the trial court erred by failing to grant a continuance or preclude use of the convictions for impeachment purposes. The effect of the ruling, the defendant argues, was to deny him the right to testify in his own defense.

Tennessee Rule of Evidence 609 provides, in pertinent part, as follows:

> If the witness to be impeached is the accused in a criminal prosecution, the [s]tate must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule on the admissibility of such proof prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a)(3). This rule permits the state to use the prior convictions of a defendant to challenge his credibility on the following conditions:

> (1) Prior conviction must be punishable by death or imprisonment for over one year or must involve a crime of dishonesty or false statement;
> (2) Less than ten years must have elapsed between the defendant's release from confinement for the prior offense and the commencement of the prosecution;
> (3) The state must give reasonable pre-trial written notice of the impeaching conviction;
> (4) The trial court must find that the impeaching convictions probative value outweigh its unfair prejudicial effect on the substantive issues.

State v. Waller, 118 S.W.3d 368, 370-71 (Tenn. 2003); see Tenn. R. Evid. 609(a)(2), (3), and (b).

The admissibility of prior convictions to impeach a testifying defendant is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion. Waller, 118 S.W.3d at 371. "The abuse of discretion standard contemplates that before reversal the record must show that a judge 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Coley, 32 S.W.3d 831, 833 (Tenn. 2000)(quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)).

In State v. Barnard, this court confirmed that the state had a duty to provide written notice of its intention to use a prior conviction to impeach the defendant's credibility at trial. State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994). In that case, the state had provided notice to the defense of the defendant's prior criminal record but had failed to express its intention to use the conviction for impeachment purposes. The state was permitted to cross-examine the defendant on his prior criminal record. This court, on appeal, determined that the trial court erred by permitting the state to use the convictions for impeachment purposes because the notice was untimely but ultimately concluded that the error was harmless. Id. Further, this court concluded that the trial court had also erred by determining that the conviction's probative value was outweighed by its unfair prejudicial effect on the substantive issues because of the similarity of the charge and the nature of the prior conviction but ruled that the error was harmless because of the strength of the evidence. Id. (citing State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992)).

Even if the defendant is unsuccessful in his challenge to the admission of a prior conviction, he is not required to establish that he did not testify because of the adverse ruling in order to present the issue on appeal. State v. Galmore, 994 S.W.2d 120, 123 (Tenn. 1999). In Galmore, our supreme court concluded that the defendant is not compelled to make an offer of proof showing what his testimony might have been, but is not precluded from doing so:

> Depending upon the facts and circumstances of a case, an offer of proof may be the only way to demonstrate prejudice. However, neither an offer of proof nor a showing that the defendant would have testified but for the trial court's ruling is required in order to preserve for review a claim of an erroneous ruling on admission of a prior conviction for impeachment purposes.

Id. at 125. Our supreme court found error by the admission of an unnamed felony conviction for impeachment purposes but determined that the error was harmless under the particular circumstances of the case. Id. The standard utilized was "whether the error in this case affirmatively or more probably than not affected the judgment to the defendant's prejudice." Id.; see Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

While the term "reasonable notice" has not been quantified in days or weeks, it is our assessment that a filing of notice by the state on the morning of the trial is untimely. The purpose of requiring the state to provide notice is two-fold: to advise the defendant and his counsel of his prior criminal record and to notify the defendant and his counsel of the state's intention to use one or more of those convictions for impeachment purposes. If the state performs its duty, the defense should have a sufficient amount of time to present any challenge to the admissibility of a conviction so as to avoid delay in the trial.

In the application of this rule, every case must be considered on its own facts. The state failed to meet its obligation in this instance and the trial court was called upon to make a difficult choice as to whether to grant a continuance, prohibit the use of the convictions to impeach the defendant, or proceed to trial and allow use of the convictions. In our view, any error as a result of choosing the latter alternative was harmless. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

Initially, the proof of guilt was substantial as to each of the four crimes.  In addition, the victim and two eyewitnesses testified to the brutality of the assault.  Further, the defendant acknowledged that he had received notice from the state of his prior criminal record well in advance of the trial in case number 76225, a case in which defense counsel in this case also represented the defendant.  During argument on the motion, the defense acknowledged having had information about the extent of the defendant's prior criminal record.  Finally, the defendant chose not to make a proffer of his contemplated testimony at the hearing on the motion for a new trial.  While a proffer, as indicated, is not a prerequisite for relief, it may have been the only way in this instance to have demonstrated that the untimely notice by the state prejudiced the trial.  In our view, the defendant has been unable to show that the state's failure to provide reasonable notice in this case denied him a fair trial.

Accordingly, the judgments are affirmed.


_____
GARY R. WADE, PRESIDING JUDGE